Roy Kenji YAMADA, M.D., Appellant,

v.

Laura FRIEND, Individually and as Personal Representative of The Estate of Sarah Elizabeth Friend, Deceased, and Luther Friend, Individually, Appellees.

No. 2–07–177–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 28, 2008.

J. Kevin Carey, Fort Worth, for appellant.

Darrell L. Keith, Fort Worth, for appellees.

PANEL A: CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

## MEMORANDUM OPINION [1]

LEE ANN DAUPHINOT, Justice.

This case is before this court on an interlocutory appeal of the trial court's denial of Appellant Roy Kenji Yamada's motion to dismiss Appellees Laura and Luther Friend's claims for failure to comply with Texas Civil Practice and Remedies Code section 74.351.[2] Appellant argues in one issue that Appellees' claims against him are health care liability claims and that therefore the trial court abused its discretion by refusing to dismiss their claims with prejudice. Because we hold that those claims of Appellee that are based on a standard of ordinary care are not health care liability claims and that their claims that are based on a standard of medical care are health care liability claims, we affirm the order in part and reverse the order in part and dismiss the health care liability claims.

### FACTS AND PROCEDURAL HISTORY

On June 16, 2006, Appellees filed suit against various defendants for the death of their daughter, Sarah. On July 14, 2006, Appellees filed their second and third amended petitions, adding Appellant as a defendant.

Appellees alleged that on July 14, 2004, Sarah Friend was visiting NRH20 Water Park, which is owned and operated by the City of North Richland Hills ("NRH"). According to Appellees' petition, at 10:48 a.m., Sarah collapsed due to a hypertrophic cardiomyopathic condition. Appellees alleged that NRH20 had at least two automated external defibrillators ("AEDs") at the park, that the AEDs were improperly used, and that other resuscitative attempts were either incorrectly performed or not performed at all by NRH20 employees. Sarah was pronounced dead at 12:14 p.m. that day.

In Appellees's petition, they maintained that

- Sarah did not receive external defibrillation, a necessary and appropriate part of the assessment, care, and treatment for her condition, until after the arrival of the NRH fire department, approximately 21 minutes after Sarah's collapse;

- Appellant held and holds himself out to Sarah, her parents, and the general public as possessing that degree of knowledge and skill required of a competent medical doctor specializing in emergency medicine;

- Appellant "was responsible for and provided medical consultative advice and recommendations to and for the various safety practices and procedures" at NRH20;

- Appellant had a duty under Texas law to exercise ordinary care and act as an emergency medicine physician of reasonable and ordinary prudence under the same or similar circumstances in providing services to NRH; and

- Appellant breached his duty in that he failed to timely, properly, and adequately provide services to NRH and "committed other acts or omissions of negligence or wrongdoing."

They also made a claim of gross negligence against Appellant on the same grounds.

---

1. See TEX.R.APP. P. 47.4.

2. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp. 2007).

Appellant filed a motion to dismiss Appellees' claims against him for failure to comply with Texas Civil Practices and Remedies code section 74.351. He contended that Appellees' claims against him are health care liability claims and consequently, because Appellees had failed to provide him with an expert report, the claims should be dismissed.

In response, Appellees argued that their claims against Appellant are not health care liability claims. Appellees contended that

- Services provided by Appellant to NRH included services in connection with the proper placement of life saving devices such as the AEDs.
- Appellees' claims against Appellant involve "a claimed departure from accepted standards of safety directly related to the adequate, proper, and safe management of a water amusement park, including the adequate proper, and safe management of life[-]saving devices at such water amusement park."

They maintained that Appellant was not in any way involved in the medical or health care diagnosis, care, and treatment of Sarah on July 14, 2004, and that their claims are ordinary negligence claims. The trial court denied the motion to dismiss, and Appellant filed this interlocutory appeal.

### STANDARD OF REVIEW

■ We review for abuse of discretion a trial court's denial of a motion to dismiss a claim under Texas Civil Practices and Remedies Code section 74.351(b).[3] We review de novo, however, a trial court's determination of whether the claim at issue is a health care liability claim.[4]

### ANALYSIS

■ In a health care liability claim, a plaintiff must serve an expert report on a defendant physician or health care provider no later than the 120th day after the plaintiff's original petition is filed.[5] If no expert report has been filed by that date, then upon motion of the defendant, the trial court must dismiss with prejudice the plaintiff's claims against that defendant.[6] A plaintiff cannot avoid the expert report requirement by artful pleading; we determine whether a claim is a health care liability claim by examining that claim's underlying nature.[7]

Section 74.001(13), which defines "health care liability claim," states,

"Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of *medical care, or health care, or safety or professional or administrative services directly related to health care,* which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.[8]

The parties do not dispute that Appellant is a physician. Appellees also alleged that acts of Appellant proximately resulted in Sarah's death. Accordingly, the only

3. *Valley Baptist Med. Ctr. v. Stradley,* 210 S.W.3d 770, 774–75 (Tex.App.-Corpus Christi 2006, pet. denied).

4. *Id.; see also Brown v. Villegas,* 202 S.W.3d 803, 805 (Tex.App.-San Antonio 2006, no pet.).

5. § 74.351(a).

6. § 74.351(b).

7. *Valley Baptist,* 210 S.W.3d at 775.

8. TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(13) (Vernon 2005) (emphasis added).

question before us is whether Appellees' claims are for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care.

In support of their position, Appellees cite *Rogers v. Crossroads Nursing Serv., Inc.*[9] In *Crossroads*, the plaintiff was injured when a heavy supply bag, placed on a table by a home health care company employee, fell and injured him.[10] The court of appeals in that case first noted that where a claim is governed by an accepted standard of safety within the health care industry, the claim is a health care liability claim; when a claim is governed by a standard of ordinary care, the claim is for common law negligence.[11] The court went on to hold that because "the question of how to place a heavy supply bag in a patient's home so as not to injure the patient is not governed by an accepted standard of safety within the health care industry, but rather is governed by the standard of ordinary care," the claim at issue was for common law negligence.[12] Appellees maintain that, under this reasoning, because their claims are governed by an ordinary standard of care, they are not health care liability claims.

Appellant argues that Appellees' claims are health care liability claims under the Texas Supreme Court's decision in *Diver-*

*sicare General Partner, Inc. v. Rubio* because their claims are based on Appellant's medical judgment and allege a breach of a standard of care by a health care provider.[13] In *Diversicare*, a nursing home resident, by her daughter as next friend, sued the nursing home for injuries from falls she sustained while a resident at a nursing home facility and from sexual assault by another resident of the nursing home.[14] The court held that her causes of action constituted health care liability claims[15] and stated that "the Legislature's inclusion within the scope of the [Medical Liability Insurance Improvement Act] of claims based on breaches of accepted standards of 'safety' expands the scope of the statute beyond what it would be if it only covered medical and health care."[16]

Both *Diversicare* and *Crossroads* arose under and applied the prior version of the law, which defined "health care liability claim" with respect to safety claims as "a cause of action against a health care provider or physician for . . . [a] claimed departure from accepted standards of . . . safety which proximately results in injury to or death of the patient."[17] Notably absent from that definition is the phrase "directly related to health care."[18] Under this prior version of the statute, courts nevertheless routinely limited "safety" claims to those claims that related to the provision of health care.[19]

9. 13 S.W.3d 417 (Tex.App.-Corpus Christi 1999, no pet.).

10. *Id.* at 418.

11. *Id.* at 418–19.

12. *Id.* at 419.

13. 185 S.W.3d 842, 845 (Tex.2005).

14. *Id.* at 845.

15. *Id.*

16. *Id.* at 855.

17. Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.03(a)(4), 1977 Tex. Gen. Laws 2039 (former Tex.Rev.Civ. Stat. art. 4590i), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847.

18. *See id.*

19. *See Diversicare*, 185 S.W.3d at 866 (Justice O'Neill, dissenting) (reasoning that "the natural conclusion is that 'safety' in [the prior statute] means safety as it relates to health

The current version of the statute expressly requires safety claims to be "directly related to health care" but does not establish factors to be considered by a court in determining whether a claim does, in fact, directly relate to health care. "Health care" is defined as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." [20]  The Supreme Court of Texas has held that a cause of action is a health care liability claim if "the act or omission alleged in the complaint is an inseparable part of the rendition of health care services" and that "[o]ne consideration in that determination may be whether proving the claim would require the specialized knowledge of a medical expert." [21]

■ The only acts or omissions of Appellant alleged by Appellees are that he failed to properly provide advice and recommendations to NRH about its safety practices, including its placement and maintenance of AEDs. The fact that expert medical testimony may be needed at some point in a case does not perforce create a health care liability claim. In the case before us, medical testimony is not required to establish the proper placement of AED devices. Because the advice allegedly given by Appellant to NRH as to where to place AEDs does not relate *directly* to acts performed or furnished by a health care provider to Sarah during her medical care, treatment, or confinement, these claims against Appellant are not health care liability claims. [22]  Accordingly, the trial court did not abuse its discretion by refusing to dismiss Appellees' ordinary negligence claims.

■ Appellees also alleged that Appellant provided "medical consultative advice" to NRH, that he had a duty to act "as an emergency medicine physician of reasonable and ordinary prudence under the same or similar circumstances in providing services to NRH," and that he breached his duty. A claim alleging a breach of a standard of medical care is a health care liability claim. [23]  Thus, Appellees' claim that Appellant breached the standard of medical care for emergency medicine physicians by providing medical consultative advice regarding the placement of AEDs

care," noting that each of the courts of appeals that had considered the issue had reached the same conclusion, and pointing out that, in revising the statutory definition of "health care liability claim," the Texas Legislature adopted Texas appellate courts' construction of safety claims under the prior statute as those safety claims that are directly related to the provision of health care).

20. § 74.001(10).

21. *Garland Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 544 (Tex.2004).

22. *See, e.g., Valley Baptist,* 210 S.W.3d at 775–76 (holding that claims against a wellness facility for injuries sustained when the plaintiff fell off a treadmill were not health care liability claims even though her doctor had recommended the exercise and the facility to her, and stating that "in most situations a doctor's recommendation of regular exercise is no more related to the rendition of health care than the automobile ride one makes for a doctor's appointment"); *Christus Health v. Beal,* 240 S.W.3d 282, 292–93 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (holding that the plaintiff's claims about an unsafe bed do not constitute health care liability claims because the act complained of did not directly relate to the plaintiff's treatment for his drug addiction).

23. *See* § 74.001(13); *Wright v. Fowler,* 991 S.W.2d 343, 352 (Tex.App.-Fort Worth 1999, no pet.) ("If the cause of action is based on the physician's breach of the accepted standard of medical care, the cause of action is nothing more than a health care liability claim, regardless of how the plaintiff labels it.").

are health care liability claims. The trial court should have dismissed them because of Appellees' failure to provide Appellant with an expert report pursuant to section 74.351. We therefore sustain Appellant's issue in part.[24] We overrule the remainder of Appellant's issue.

### CONCLUSION

Having overruled in part and sustained in part Appellant's issue, we affirm the trial court's order denying the motion to dismiss as to Appellees' ordinary negligence claims. We reverse the trial court's order as to Appellees' claims that are based on a standard of medical care and dismiss those claims with prejudice. We remand the cause to the trial court for further proceedings consistent with this opinion.[25]

---

**24.** *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) ("If, as to a defendant physician or health care provider, an expert report has not been served ... the court, on the motion of the affected physician or health care provider, shall ... enter an order that ... dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.").

**25.** If Appellant believes that Appellees' claims are too general or that their petition is otherwise insufficient, he has a remedy available. *See* TEX.R. CIV. P. 91 (providing a procedure for filing special exceptions).