[COMMENT1] 

 

 

 

 

 

                                        COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO.
2-07-122-CV

 

 

HARRIS
METHODIST FORT WORTH                                       APPELLANT

 

                                                      V.

 

JO
FAWN OLLIE                                                                      APPELLEE

 

                                                  ------------

 

             FROM THE 236TH
DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                                OPINION

 

                                                  ------------

In this interlocutory appeal, Appellant Harris
Methodist Fort Worth (Harris Methodist) contends that the trial court erred by
denying its motion to dismiss Appellee Jo Fawn Ollie=s claim
and by not awarding reasonable attorney=s fees
to Harris Methodist.  We will affirm.





I. BACKGROUND AND PROCEDURAL HISTORY

On June 14, 2004, Ollie underwent a total knee
arthroplasty (knee replacement) at Harris Methodist.  Ollie alleges that on June 17, 2004, while
still a patient at Harris Methodist, she attempted to get out of the bathtub
when she fell on the Aslippery wet floor,@ which
had created a dangerous and hazardous condition, injuring her right
shoulder.  On June 16, 2006, Ollie filed
suit against Harris Methodist, alleging causes of action under two theories of
liability.  Ollie asserted under a Ageneral
negligence theory@ the following:

!               
Defendant owed Plaintiff and others the duty to provide a safe
environment maintained properly, so as to not cause harm and/or injury.  Defendant breached said duty by failure to
maintain and warn Plaintiff of the dangerous and hazardous condition.

 

Ollie asserted next under a Amedical
malpractice theory@ the following:

!               
Defendant breached said duty of medical malpractice by failing to
provide a safe environment, maintained properly, so as to not cause harm and/or
injury.  Defendant breached said duty of
medical malpractice by failure to maintain and warn Plaintiff of the dangerous
and hazardous condition.

 

On the same date that she filed suit, Ollie sent
Harris Methodist notice of the health care liability claim as required by
Chapter 74.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 74.051 (Vernon 2005).  However, on October 11, 2006, Ollie amended
her petition, deleting her medical malpractice claim but keeping her general
negligence claim as stated in her original petition.





Harris Methodist filed a motion to dismiss Ollie=s claim
because Ollie failed to comply with the requirements of section 74.351 of the
Texas Civil Practice and Remedies Code, stating that in a health care liability
claim, the claimant shall serve on each party an expert report within 120 days
of filing the petition.  Id. ' 74.351(a).  The trial court denied the motion to dismiss,
and Harris Methodist then filed this interlocutory appeal.

II.  HEALTH CARE LIABILITY CLAIM

Ollie does not argue that she filed an expert
report; therefore, in addressing Harris Methodist=s first
point that the trial court erred by denying its motion to dismiss, our
discussion is limited to the issue of whether Ollie=s claim
constitutes a Ahealth care liability claim.@

Generally, we review a denial of a motion to
dismiss under an abuse of discretion standard. 
Valley Baptist Med. Ctr. v. Stradley, 210 S.W.3d 770, 773 (Tex.
App.CCorpus
Christi 2006, pet. denied).  However, we
review de novo the trial court=s denial
of a motion to dismiss when it involves the determination of whether the claim
is a health care liability claim under Chapter 74.  Id.





To determine whether Ollie=s
allegations constitute a health care liability claim, we look to the underlying
nature of the claim and are not bound by the form of the pleading.  Diversicare Gen. Partner, Inc. v. Rubio,
185 S.W.3d 842, 847 (Tex. 2005).  Artful
pleading and recasting of claims to avoid the requirements of Chapter 74 is not
permitted.  Id. at 854; Garland
Comty. Hosp. v. Rose, 156 S.W.3d 541, 543 (Tex. 2004).  If the act or omission alleged in the
complaint is an inseparable part of the rendition of health care services, then
the claim is a health care liability claim. 
Rose, 156 S.W.3d at 544; Shults v. Baptist St. Anthony=s Hosp.
Corp., 166 S.W.3d 502, 505 (Tex. App.CAmarillo
2005, pet. denied); see also Walden v. Jeffrey, 907 S.W.2d 446, 448
(Tex. 1995).  To help us in that
determination, we consider whether testimony from a medical or health care
professional is necessary to prove the claim. 
Diversicare, 185 S.W.3d at 848, 851.

Ollie maintains that her claim is merely a
premises liability claim, whereas Harris Methodist argues that because Ollie
alleged that Harris Methodist failed to provide a Asafe
environment,@ her allegations constitute a
health care liability claim under Chapter 74. 
A health care liability claim is defined under section 74.001 as
follows:

[A] cause of action
against a health care provider or physician for treatment, lack of treatment,
or other claimed departure from accepted standards of medical care, or health
care, or safety or professional or administrative services directly related
to health care, which proximately results in injury to or death of a
claimant, whether the claimant=s claim or cause of action sounds in tort or
contract.

 

Tex. Civ. Prac. & Rem. Code Ann. ' 74.001(a)(13)
(emphasis added).



Ollie states that because this
case is governed by the new definition[1]
of health care liability claim, safety claims must now be directly related to
health care.  See id.  We agree with Ollie=s
reading of the statute and have recently held that safety claims under Chapter
74 must be directly related to health care. 
See Yamada v. Friend, No. 02‑07‑00177‑CV, 2008
WL 553690, at *3 (Tex. App.CFort
Worth Feb. 28, 2008, no pet. h.) (mem. op.) (not designated for publication); See
also Omaha Healthcare Ctr., L.L.C. v. Johnson, 246 S.W.3d 278, 284 (Tex.
App.CTexarkana
2008, pet. filed); Christus Health v. Beal, 240 S.W.3d 282, 289 (Tex.
App.CHouston
[1st Dist.] 2007, no pet.); Stradley, 210 S.W.3d at 775.  But see Holguin v. Laredo Reg=l Med.
Ctr., L.P., 256 S.W.3d 349, 354B55 (Tex.
App.CSan
Antonio 2008, no pet.) (citing Emeritus Corp. v. Highsmith, 211 S.W.3d
321, 328 (Tex. App.CSan Antonio 2006, pet. denied))
(rejecting the contention that safety claims must be directly related to health
care).

 



Harris Methodist argues that a safety claim does
not have to be directly related to health care,[2]
but it contends that even if this court reads the statute as requiring this
direct relationshipCand we doCOllie=s claim
still falls under Chapter 74.  The
supreme court in Diversicare defined Asafety@ as the
condition of being Auntouched by danger; not exposed
to danger; secure from danger, harm or loss.@  185 S.W.3d at 855.  AHealth
care@ is
defined under section 74.001 as Aany act
or treatment performed or furnished, or that should have been performed or
furnished, by any health care provider for, to, or on behalf of a patient
during the patient=s medical care, treatment, or
confinement.@ 
Tex. Civ. Prac. & Rem. Code Ann. ' 74.001(10).





Harris Methodist relies heavily on the supreme
court=s
holding in Diversicare to support its argument that Ollie=s claim
is a health care liability claim.  See
185 S.W.3d 842.  The appellant in Diversicare,
a nursing home resident who suffered from Senile Dementia of the Alzheimer=s Type,
sustained injuries from two separate falls and was sexually assaulted at the
nursing home by another resident.  Id.
at 845.  In connection with her injuries
sustained from the falls, the appellant alleged that the nursing home and its
staff were negligent in failing to provide adequate supervision and nursing
services to meet her fundamental needs; failing to budget for, hire, and train
a sufficient number of qualified direct health care staff; and failing to
develop and implement adequate policies and procedures for safety, training,
and staffing at its nursing homes.  Id.  She alleged further in an amended petition
regarding the sexual assault that the nursing home and its staff failed to
adequately supervise and monitor her to protect her from sexual abuse and
assault by another resident.  Id.





The supreme court ultimately held that the
appellant=s claims, including those
concerning the sexual assault, were health care liability claims based on the
special relationship between a nursing home and its residents.  Id. at 850B55.  Health care staff make judgments about the
care, treatment, and protection of individual patients and the patient
populations in their facilities based on the mental and physical care the
patients require.  Id. at
850.  The supreme court stated that
expert testimony is required to determine the appropriate number, training, and
certifications of medical professionals necessary to care for and protect
patients in weakened conditions from injury by other patients in a health care
facility.  Id. at 851.

Harris Methodist contends that because Ollie=s
specific allegation of negligence derives from the relationship between a
hospital and its patient, Ollie=s claim Ain that
regard@ is a
claim that Harris Methodist was negligent in failing to properly supervise her,
failing to properly maintain a safe environment, and in allowing her to be
placed in a situation where she could suffer this fall.  We disagree.

While the supreme court in Diversicare
held that the appellant=s claims were health care
liability claims, it noted that while not present in that case, A[t]here
may be circumstances that give rise to premises liability claims in a
healthcare setting that may not be properly classified as health care liability
claims.@  Id. at 854.  The supreme court stated that the appellant
was not complaining about an unlocked window that gave an intruder access to
the facility or a rickety staircase that gave way under her weight; her
allegations implicated more than inadequate security and Anegligent
maintenance.@  Id. (emphasis added).





Like the appellant in Diversicare, Ollie
was in a weakened condition at the time of the injury.  She was bathing in the hospital bathroom
three days removed from a total knee replacement when she fell and injured her
shoulder.  Unlike the appellant in Diversicare,
however, Ollie alleged that Harris Methodist failed to maintain and warn Ollie
of the dangerous and hazardous conditionCi.e.,
the slippery, wet bathroom floorCnot that
Harris Methodist failed to properly supervise her or provide care for her while
taking a bath.  Ollie was a patient in a
weakened condition complaining of the rickety staircase or the unlocked window.[3]  Her pleading does not state that special
precautions should have been taken for her as a post-knee replacement
patient.  Her allegations assert a breach
of ordinary care.





Harris Methodist argues next that if safety
claims must be directly related to health care, the broad definition of health
care encompasses Ollie=s claim on its face.  Harris Methodist states that the term health
care, defined as Aan act or treatment performed or
furnished, or that should have been performed or furnished, by any health care
provider for, to, or on behalf of a patient during the patient=s
medical care, treatment, or confinement,@ is so
broad as to Acover virtually anything
that could befall a patient during a patient=s
confinement at the hospital.@  Tex. Civ. Prac. & Rem. Code Ann. ' 74.001(10).  Thus, it argues that safe maintenance of the
patient=s
bathroom and warning a patient of a dangerous and hazardous condition during
the patient=s convalescence in the hospital
following a knee replacement are acts that should have been performed during
the patient=s confinement.  See id.

We find this argument incongruent, however, with
Harris Methodist=s earlier position regarding the
interpretation of the newly revised definition of health care liability
claim.  Harris Methodist previously
argued that reading the statute in a manner that modified safety with the Arestrictive
phrase@
directly related to health care would Athwart@ the
legislature=s intent.  It went on to state in its argument against
reading the statute as requiring that safety be directly related to health care
that Athere is
nothing to indicate that the Legislature . . . intended to narrow
the breadth of a significant portion of [tort-reform legislation] and exempt
claims that had previously been considered >health
care liability claims= from the newly revised
definition.@ [Emphasis added].  Thus, Harris Methodist argues, without
explanation, that the addition of Adirectly
related to health care@ both broadens and narrows the
definition of health care liability claim.





In addressing this argument, we look to a case in
which the supreme court denied petition for discretionary review on the same
day it delivered the opinion in Diversicare.  See Shults, 166 S.W.3d at
502.  In Shults, the hospital
instructed the appellant, who suffered from diabetes, to take a shower in
preparation for surgery on his leg.  Id.
at 503.  After showering, the appellant
injured his foot when he allegedly stepped on a sharp paint chip on the
bathroom floor.  Id.  Among other claims, the appellant alleged
that the hospital had been negligent by failing to provide a reasonably safe
shower, inspect the shower, and adequately supervise the renovation of the
shower.  Id.

The court stated that personal injury claims
resulting from departures from accepted standards of safety may be health care
liability claims but that such departures must be Ainseparable
parts of the rendition of medical services and the standards of safety within
the health care industry to be covered by the Act.@  Id. at 505.  The court of appeals held that the appellant=s claims
were not health care liability claims because the presence of a sharp paint
chip in the shower of the appellant=s
hospital room could not be considered in any way an inseparable part of the
medical services rendered to the appellant. 
Id.





Likewise, we cannot say that cleaning the
bathroom floor and warning Ollie of its condition is inseparable from the
medical or health care services rendered to Ollie.  Id.; see also Stradley, 210
S.W.3d at 776 (stating that in most situations a doctor=s
recommendation to exercise is not related to the rendition of health
care).  Indeed, medical testimony is not
necessary to understand Ollie=s claim
that Harris Methodist failed to use ordinary care as alleged in her petition.[4]





Further, the supreme court in Diversicare
interpreted the effect of the term Asafety@ as
included in the previous definition of health care liability claim, stating
that Athe
Legislature=s inclusion within the scope of
the MLIIA of claims based on breaches of accepted standards of >safety= expands
the scope of the statute beyond what it would be if it only covered medical and
health care.@ 
185 S.W.3d at 855 (emphasis added). 
The Court went on to note, however, that while the term safety expanded
the scope of the previous statute, A[p]rofessional
supervision, monitoring, and protection of the patient population necessarily
implicate the accepted standards of safety under the MLIIA, just as those
duties in this case are included in the term health care.@  Id. 
Under this construct, the Court stated that some circumstances might
give rise to premises liability claims in a health care setting that may not be
properly classified as health care liability claims like a rickety staircase or
an unlocked window, which as we stated above are similar to Ollie=s claim
regarding the slippery, wet floor.  Thus,
we cannot conclude, as Harris Methodist urges, that this category of negligent
maintenance claims that were apparently not considered health care liability
claims under Diversicare are somehow now transformed to health care
liability claims because the new definition modifies Asafety@ with
the phrase Adirectly related to health care.@

Lastly, we note one case that discusses health
care liability claims in the context of a patient that suffered an injury while
in a post-operative condition like Ollie=s.  See Torres v. Mem=l
Hermann Hosp. Sys., 186 S.W.3d 43, 44 (Tex. App.CHouston
[1st Dist.] 2005, no pet.).  The
appellant in Torres underwent knee replacement surgery at the hospital,
and the hospital transferred her to the rehabilitation unit three days after
her surgery.  Id.  While at the rehabilitation unit, the
appellant felt weak and could not walk without assistance.  Id. 
The appellant needed to use the restroom, but the nurses allegedly told
her that because there were neither bedpans nor bedside commodes on the
rehabilitation floor, she would have to walk to the restroom.  Id. 
The appellant claims that she asked for help but that the nurses never
came to assist her.  Id.  The appellant=s
daughter attempted to help the appellant walk to the restroom, but the appellant fell and fractured the femur bone of her surgically-repaired
leg.  Id.





In her petition, the appellant alleged that
because she was a patient at the hospital, the hospital owed her a duty to
supply the required equipment and instrumentalities for the care of its
patients, including furnishing a bedpan and other similar devices and furnishing
adequate care to assist her in her rehabilitation period.  Id. at 45.  The court of appeals held that the underlying
nature of the appellant=s allegations was that the
hospital and the nurses did not provide her with proper treatment and
facilities during her post-operative inpatient rehabilitation.  Id. at 48  Thus, the court held that her claims were
health care liability claims.  Id.

Torres differs from the present case
because Ollie did not allege a failure to care for her as a post-operative
patient or a failure to provide certain instrumentalities to help her take a
shower or bath.  In Torres, the
appellant=s allegations were inseparable
from the medical servicesCor lack of medical servicesCthat she
received while in the rehabilitation unit. 
We cannot say, however, that Ollie=s claim
that the hospital failed to properly clean the bathroom floor and warn her
about the hazardous condition is the same as a claim regarding the failure to
provide a bedpan or the failure to help a post-operative patient walk to the
restroom after that patient had requested such assistance.  See id. at 44.





In sum, we must look to the underlying nature of
Ollie=s claim
in her petition, not at the underlying nature of all the potential claims that
Ollie could have pled.  Ollie=s claim
in her petition states that Harris Methodist failed to use ordinary care, which
does not require the aid of expert testimony to comprehend.  The acts or omissions complained of are not
inseparable from the rendition of medical services and the accepted standards
of safety within the health care industry. 
Ollie=s allegations do not constitute
a health care liability claim. 
Accordingly, we overrule Harris Methodist=s first
point.

III. ATTORNEY=S FEES

Harris Methodist argues in its second point that
the trial court erred by failing to award attorney=s fees
to Harris Methodist.  If the plaintiff
fails to file an expert report, the trial court must order the plaintiff to pay
reasonable attorney=s fees and court costs incurred
by the affected health care provider. 
Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(b)(1).  However, because we overruled Harris
Methodist=s first point, we accordingly
overrule its second point.





IV. CONCLUSION

Having overruled both of Harris Methodist=s
points, we affirm the trial court=s
judgment.

 

DIXON
W. HOLMAN

JUSTICE

 

PANEL:  DAUPHINOT, HOLMAN, and WALKER, JJ.

 

WALKER, J. filed a
dissenting opinion.

 

DELIVERED:  October 30, 2008















 
 
 
 
 
 
 




                                                        

 

 

 

 

 

                                        COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-122-CV

 

 

HARRIS
METHODIST FORT WORTH                                       APPELLANT

 

                                                      V.

 

JO
FAWN OLLIE                                                                      APPELLEE

 

                                                  ------------

 

             FROM THE 236TH
DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                     DISSENTING OPINION

 

                                                  ------------

I.  INTRODUCTION



 



I respectfully dissent.  The direct liability negligence claim
Appellee Jo Fawn Ollie asserts against Appellant Harris Methodist Fort Worth
falls squarely within the statutory definition of a Ahealth
care liability claim@ as a claimed departure from
safety directly related to an act furnished by Harris Methodist to Ollie during
her confinement in the hospital. 
Consequently, Ollie was required to file an expert report; she did not,
and the trial court erred by refusing to dismiss Ollie=s claims
and by refusing to award attorney=s fees
to Harris Methodist.

II.  OLLIE=S PLEADINGS
AND PROCEDURAL BACKGROUND

Ollie brought suit against Harris Methodist for
injuries that she sustained when, as she exited the bathtub, she slipped on the
wet floor, fell, and hurt herself.  Ollie
alleged that

[o]n or about June 17, 2004, JO FAWN OLLIE was a patient on property
controlled by the Defendant, and was injured under the following circumstances:
Plaintiff had a total knee arthroplasty on June 14, 2004 and on the date of the
accident June 17, 2004, Plaintiff had got into the bathtub and as she was
getting out, Plaintiff slipped on the slippery wet floor which created Aa dangerous and hazardous
condition@ and that the Plaintiff
fell victim to the hazards and injured her right shoulder.

 

. . . .

 

Defendant owed Plaintiff and others the duty to provide a safe
environment, maintained properly, so as not to cause harm and/or injury.

Defendant breached said duty by failure to maintain and warn Plaintiff
of the dangerous and hazardous condition.

 





Ollie did not file any expert report; Harris Methodist subsequently
filed a motion to dismiss Ollie=s claims
with prejudice and for attorney=s fees.[5]  The trial court conducted a hearing on Harris
Methodist=s motion to dismiss.  Ollie argued that her claim was not a health
care liability claim subject to chapter 74 of the civil practice and remedies
code; Harris Methodist argued that Ollie=s claim
did fall within that statute.  At the
conclusion of the hearing, the trial court denied Harris Methodist=s motion
to dismiss.

III.  STANDARD
OF REVIEW



 



Whether a claim is a health care liability claim
under section 74.351 of the Texas Civil Practice and Remedies Code is a
question of law and is reviewed de novo. 
Valley Baptist Med. Ctr. v. Stradley, 210 S.W.3d 770, 773 (Tex.
App.CCorpus
Christi 2006, pet. denied); Buck v. Blum, 130 S.W.3d 285, 290 (Tex. App.CHouston
[14th Dist.] 2004, no pet.).  In order to
determine whether the plaintiff asserted a health care liability claim, we must
examine the underlying nature of the allegations.  See Murphy v. Russell, 167 S.W.3d 835,
838 (Tex. 2005).  Claimants may not
recast a health care liability claim as some other type of claim in an attempt
to avoid the application of chapter 74.  See
id.  The necessity of expert
testimony from a medical or health care professional to prove a claim may also
be an important factor in determining whether a cause of action is an
inseparable part of the rendition of medical or health care services.  Diversicare Gen. Partner, Inc. v. Rubio,
185 S.W.3d 842, 847 (Tex. 2005).

IV.  Relevant Provisions
 of Chapter 74 and
Its Application Here;

Ollie=s Claim

is a Health Care Liability
Claim

A Ahealth
care liability claim@ is statutorily defined as 

a cause of action against a health care provider
or physician for treatment, lack of treatment, or other claimed departure from
accepted standards of medical care, or health care, or safety or professional
or administrative services directly related to health care, which proximately
results in injury or death of a claimant, whether the claimant=s claim
or cause of action sounds in tort or contract. 



 



Tex. Civ. Prac. & Rem. Code Ann. '
74.001(13) (Vernon 2005).  A hospital is
a Ahealth
care provider.@ 
Id. ' 74.001 (11)(G).  And for purposes of the above definition of a
health care liability claim, breach of the accepted standards must be directly
related to Ahealth care,@ which
is defined as Aany act . . . furnished . . . by
any health care provider for, to, or on behalf of a patient during the patient=s . . .
confinement.@ 
Id. ' 74.001(10); Valley Baptist
Med. Ctr., 210 S.W.3d at 774B75
(holding rules of grammar mandated application of Adirectly
related@
language in definition of health care liability claim to each of the categories
of departures from accepted standards identified in definition); Omaha
Healthcare Ctr., L.L.C. v. Johnson, 246 S.W.3d 278, 284 (Tex. App.CTexarkana
2008, pet. filed) (same).  In every claim
that falls within the above definition of a health care liability claim, a
claimant shall, not later than the 120th day after the date the claim was
filed, serve on each party or the party=s
attorney one or more expert reports. 
Tex. Civ. Prac. & Rem. Code Ann. '
74.351(a).

Simply applying the above statutory language to
the present facts, Ollie=s claim is a health care
liability claim because she is asserting a cause of action against a health
care provider (Harris Methodist) for a claimed departure from accepted
standards of safety (Harris Methodist=s alleged
creation of Aa dangerous and hazardous
condition@ on the bathroom floor) that is
directly related to Ahealth care,@ (that
is, directly related to the bath furnished by Harris Methodist to Ollie during
her confinement).  See Tex. Civ.
Prac. & Rem. Code Ann. '
74.001(10), (11)(G), (13); see also Tex. Gov=t Code
Ann. ' 311.011
(Vernon 2005) (stating that words in statute are to be given common meaning).

V.  Ordinary Care
 is Inapplicable;

Ollie=s
Claim is a Health Care
Liability Claim



 



The majority, nonetheless, characterizes Ollie=s claim
as a premises liability claim asserting ordinary negligence.  The majority cites Valley Baptist Medical
Center, 210 S.W.3d at 776, Shults v. Baptist St. Anthony=s
Hospital, 166 S.W.3d 502, 503 (Tex. App.CAmarillo
2005, pet. denied), and dicta in Diversicare, 185 S.W.3d at 847.[6]  While the distinction between these ordinary
negligence cases cited by the majority and the present case is hard to
articulate, the difference becomes obvious upon an examination of the
underlying nature of the claim pleaded by Ollie.  See Diversicare, 185 S.W.3d at 847
(instructing us to examine the underlying nature of the claim to determine
whether a claim is a health care liability claim).

That Ollie=s claim
is in the underlying nature of a health care liability claim becomes obvious
when an effort is made to conceptualize submission of Ollie=s claim
against Harris Methodist as a premises liability claim for breach of ordinary
negligence as contemplated by the majority. 
The standard premises liability, plaintiff-is-invitee question asks,

Did the negligence, if
any, of those named below proximately cause the [occurrence or injury] in
question?

 

With respect to the
condition of the premises, Don Davis was negligent if---

a.      the
condition posed an unreasonable risk of harm, and 

b.      Don
Davis knew or reasonably should have known of the danger, and 





c.      Don
Davis failed to exercise ordinary care to protect Paul Payne from
the danger, by both failing to adequately warn Paul Payne of the
condition and failing to make that condition reasonably safe.

 

AOrdinary care,@ when used with respect
to the conduct of Don Davis as an owner or occupier of a premises, means
that degree of care that would be used by an owner or occupier of ordinary
prudence under the same or similar circumstances.

 

Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern
Jury Charges: Malpractice, Premises & Products PJC 66.4 (2006).  Any attempt to apply the definition of Aordinary
care@ to the
present facts demonstrates that Ollie=s claim
is not one for breach of ordinary care.





For example, superimposing the above definition
of ordinary care on the present facts, ordinary care when used with respect to
the conduct of Harris Methodist means that degree of care that would be used by
an owner or occupier of ordinary prudence under the same or similar
circumstances, i.e., where the owner or occupier is a hospital, the plaintiff
is a patient confined at the hospital, the hospital furnishes a bath for the patient
during her confinement, and the patient is three days post a total knee
arthroscopy.  AThe same
or similar circumstances@ as those here exist only when
the owner or occupier is a hospital, the plaintiff is a post-surgery,
limited-mobility patient confined at the hospital, and the danger is a Aslippery,
wet floor@ encountered by the patient when
she exits the bath furnished by the hospital to her during her confinement.[7]  That is, application of the ordinary care,
same-or-similar-circumstances standard to the present facts necessarily inserts
a standard of care applicable only to hospitals, not to hotels, bed and
breakfasts, or to other owners and occupiers of a premises.  Applying the ordinary care definition, a jury
could not determine what degree of care should be utilized by Harris Methodist
to, as alleged by Ollie, Aprovide a safe environment,
maintained properly, so as not to cause harm and/or injury@ or to
warn Ollie of Athe dangerous and hazardous
condition@ in the absence of expert
testimonyCthat is, testimony about that
standard of care required of a hospital in furnishing a bath for a
post-surgery, limited-mobility patient confined at the hospital.  See, e.g., Torres, 186 S.W.3d
at 47B48 (holding
plaintiff=s claims for injuries when she
fell while attempting to walk to the bathroom three days postoperatively was a
health care liability claim requiring expert testimony); Schneider v. Haws,
118 S.W.3d 886, 891 (Tex. App.CAmarillo
2003, no pet.) (recognizing expert=s
testimony explained standard of care for doctor in providing escort to return
patient to waiting room).  In short, an attempted
application of the Asame or similar circumstances@
language demonstrates that Ollie=s claim
is in fact a health care liability claim against a health care provider for a Adeparture
from accepted standards of . . . safety . . . directly related to health care.@  See Tex. Civ. Prac. & Rem. Code
Ann. '
74.001(13) (defining Ahealth care liability claim@).





Conversely, in the cases relied upon by the
majority, the health care providerClike any
other owner or occupier of a premisesCdid owe
only ordinary care to its invitee, and application of the Asame or
similar circumstances@ language to the facts of those
cases demonstrates this.  For example, in
Shults, the Amarillo Court of Appeals held that a sharp paint chip on
the bathroom floor of a patient=s
hospital room could give rise to a premises liability claim.  166 S.W.3d at 503.  A hotel or a bed and breakfast would have the
same duty to remove sharp paint chips from an invitee=s
bathroom floor as a hospital.  In other
words, application of the ordinary care standard to this claim would not
automatically bootstrap the factfinder into a health care provider standard of
care.  Likewise, in Stradley, the
Corpus Christi Court of Appeals held that a claim for injuries based on the
failure of a treadmill=s emergency stop feature was not
a health care liability claim.  210
S.W.3d at 771B72.  Again, any gym or fitness facility would have
the same duty to ensure the proper functioning of the emergency stop features
of its equipment as a medical center fitness facility.  And again, application of the ordinary care
standard to this claim would not automatically bootstrap the factfinder into a
health care provider standard of care.

Under this same analysis, Ollie=s claim
is not, as posited by the majority, akin to a plaintiff-invitee=s
premises liability complaint about an unlocked window permitting access to an
intruder or to a rickety staircase that gave way under an invitee=s
weight, hypothetical claims mentioned by the supreme court in Diversicare.  See Maj. op. at 9 (citing Diversicare,
185 S.W.3d at 854).  Application of the
ordinary care, same-or-similar circumstances standard to the hypothetical
premises liability claims mentioned in Diversicare would not
automatically bootstrap the factfinder into a health care provider standard of
care; all owners and occupiers have the same duty to all invitees to lock
windows and to ensure that staircases are not rickety. 





The underlying nature of Ollie=s claim
as a health care liability claim becomes even more apparent upon examining
other elements she would be required to prove to establish a traditional
premises liability claim.  In a
traditional premises liability claim, as set forth in the above jury question,
Ollie would be required to prove as one element of her claim that the owner
(Harris Methodist) had actual or constructive knowledge of some condition on
the premises (water on the bathroom floor after a bath).  See Keetch v. Kroger Co., 845 S.W.2d
262, 264 (Tex. 1992) (citing Corbin v. Safeway Stores, Inc., 648 S.W.2d
292, 296 (Tex. 1983)).  A slip‑and‑fall
plaintiff satisfies this notice element by establishing one of three
things:  (1) that the defendant placed a
substance on the floor;  (2) that the
defendant actually knew that a substance was on the floor;  or (3) that it is more likely than not that
the dangerous condition existed long enough to give the premises owner a
reasonable opportunity to discover it.  Wal‑Mart
Stores, Inc. v. Reece, 81 S.W.3d 812, 814 (Tex. 2002) (citing Wal‑Mart
Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998) and Keetch,
845 S.W.2d at 265).





Thus, Ollie=s claimCif
treated as a premises liability claimCwill
require her to prove that Harris Methodist had actual or constructive knowledge
that water was on the floor in her bathroom while she was taking a bath.  Because a hospital can act only through its
employees, this will require Ollie to show that someone, most likely a nurse,
knew or should have known of the water on the floor.  Under the facts pleaded by Ollie, the issue
of whether a nurse knew or should have known of the water on the floor in Ollie=s
bathroom likewise requires expert testimony. 
For example, how frequently should a nurse check the bathroom floor of a
patient=s
room?  Should a nurse instruct a
limited-mobility patient to request assistance in entering or exiting the
bathtub?  These are questions of the
nursing standard of care owed to an in-hospital, limited-mobility patient.  Accord Torres, 186 S.W.3d at 47B48; Devereaux
v. Harris County Hosp. Dist., No. 01-05-00706-CV, 2007 WL 852618, at *4
(Tex. App.CHouston [1st Dist.] Mar. 22,
2007, no pet.) (mem. op.) (holding plaintiff=s claim
for injuries when she was not properly assisted into wheel chair was health
care liability claim).  And they are
inescapably intertwined with Ollie=s claim
that Harris Methodist Acreated >a
dangerous and hazardous condition=@ and
breached Athe duty to provide a safe
environment.@

Many, if not most, slip-and-fall cases occurring
at a hospital will be actionable premises liability claims, not health care
liability claims.  But this is not one of
them.  The underlying nature of Ollie=s claim
establishes that this is a health care liability claim.  Consequently, I would sustain Harris
Methodist=s first issue.

VI.  Conclusion

Because the plain language of Chapter 74 of the
civil practice and remedies code and the underlying nature of Ollie=s claim
both establish that her claim is a health care liability claim, I would reverse
the trial court=s order denying Harris Methodist=s motion
to dismiss.  I would render a judgment of
dismissal and remand Harris Methodist=s claim
for attorneys= fees to the trial court
pursuant to section 74.351(b).  See
Jernigan v. Langley, 195 S.W.3d 91, 94 (Tex. 2006).  Because the majority does not, I respectfully
dissent.



 



 

SUE
WALKER

JUSTICE

 

DELIVERED:  October 30, 2008











[1]A Ahealth care liability
claim@ was previously defined
as Aa cause of action against
a health care provider or physician for treatment, lack of treatment, or other
claimed departure from accepted standards of medical care or health care or
safety which proximately results in injury to or death of the patient
. . . .@  See Act of May 30, 1977, 65th Leg.,
R.S., ch. 817, ' 1.03(a)(4), 1977
Tex. Gen. Laws 2039, 2041, repealed and codified as amended by Act of
June 2, 2003, 78th Leg., R.S., ch. 204, '' 10.01, 10.09, 2003 Tex. Gen. Laws 847, 865,
884.





[2]Harris Methodist asserts
that interpreting the statute as requiring safety claims to be directly related
to health care would Athwart@ the intent of the legislature
and create a Apatently absurd result.@  Harris Methodist urges us to interpret the
statute in the same manner as Chief Justice Jefferson in Diversicare.  See 185 S.W.3d at 861 n.4 (Jefferson,
J., concurring in part, dissenting in part, and concurring in the judgment) (A[C]laims for >professional or
administrative services= must be >directly related to
health care=; however, there is no
indication that claims involving >safety= must also relate to health care. . . .
I read the amended statute as requiring only that claims for >professional or
administrative services= be >directly related to
health care.=@).





[3]Based on this reasoning,
we agree with the dissent in Marks v. St. Luke=s Episcopal HospitalCa case in which Harris
Methodist cites for the majority=s holdingCstating that allegations that a patient=s bed had been
negligently attached and assembled, creating a dangerous condition, were
premises liability claims akin to claims involving a rickety staircase.  See 229 S.W.3d 396, 403B05 (Tex. App.CHouston [1st Dist.] 2007,
pet. granted) (Jennings, J., concurring in part and dissenting in part).





[4]This is not a case
involving a health care liability claim that may be easy for the jury to
understand as Harris Methodist asserts, but rather a claim for breach of
ordinary care in which no expert testimony is needed.  See Murphy v. Russell, 167 S.W.3d 835,
838 (Tex. 2005) (stating that even though the jury might not need the aid of
expert testimony to determine the issues of the case involving lack of consent
and battery during the treatment of a patient, the expert report is still a
necessary requirement in pleading a health care liability claim under the
statute).





[5]See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(b) (Vernon Supp.
2008) (requiring trial court to grant defendant=s motion to dismiss
health care liability claim with prejudice and to award defendant attorney=s fees if health care
liability claimant fails to file an expert report concerning the conduct of the
moving defendant).





[6]The majority also
discussesCin an effort to
distinguishCTorres v. Memorial
Hermann Hospital System, 186 S.W.3d 43, 47B48 (Tex. App.CHouston [1st Dist.] 2005, no pet.).  In Torres, the Houston First Court
held that the plaintiff=s claim for injuries when
she fell while attempting to walk to the bathroom three days postoperatively
was a health care liability claim.  Id.





[7]The majority notes that
Ollie=s pleading Adoes not state that
special precautions should have been taken for her as a post-knee replacement
patient.@  Maj. op. at 9.  But the content of Ollie=s pleading is not
controlling; we are to examine the underlying nature of her claim, and she is
not permitted to recast a health care liability claim as a premises liability
claim.  See Diversicare, 185
S.W.3d at 847.















 [COMMENT1]

Majority Opinion by Justice Holman; Dissenting
Opinion by Justice Walker