COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                       NO.
 2-09-191-CV

 

 

BASITH GHAZALI, M.D.                                                       APPELLANT

 

                                                   V.

 

PATRICIA BROWN                                                                  APPELLEE

 

                                              ------------

 

           FROM
THE 352ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. 
Introduction








Appellant
Basith Ghazali, M.D. appeals the trial court=s denial
of his motion to dismiss Appellee Patricia Brown=s
claims.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 51.014(a)(9) (Vernon
2009), ' 74.351(b)
(Vernon Supp. 2009).  In two issues, Dr.
Ghazali argues that Brown=s claims against him are health
care liability claims and that the trial court erred by failing to dismiss her
claims with prejudice because she did not provide an expert report fulfilling
the requirements of section 74.351.  Id. ' 74.351(r)(6).  Because we hold that Brown=s claims
are not health care liability claims, we will affirm.

II. 
Factual and Procedural History

In May
2004, Brown visited an American Laser Center location in Fort Worth for laser
hair removal on her lip, cheek, jaw line, and neck.  At that time, Dr. Ghazali served as the
medical director at the facility.[1]  Between May 2004 and September 2006, Brown
went to American Laser Center at recommended intervals.  But Brown claims she suffered severe burning,
blistering, and lacerations on her face and neck during her visit on September
8, 2006, that resulted in permanent scarring and discoloration.








On
September 5, 2008, Brown filed her original petition against Dr. Ghazali and
the American Laser Center corporate entities and alleged negligence, negligent
failure to warn, gross negligence, violations of the Texas Deceptive Trade
PracticesBConsumer Protection Act, fraud,
and lack of informed consent.[2]  Within the 120-day period required by section
74.351, Brown served Dr. Ghazali with an expert report authored by Dr. Gil
Segev.  Relying on Brown=s
statements, medical history, and medical files, Dr. Segev wrote in his report, among
other things, that

$       
an African-American individual should be informed that the inherent
risks of laser hair removal are increased in individuals with darker skin
tones;

 

$       
one specific laser, an Nd:YAG laser, is safer to use on
African-American individuals than other types of hair removal lasers;

 

$       
Dr. Ghazali failed to obtain written informed consent from Brown;

 

$       
Dr. Ghazali failed to obtain verbal informed consent from Brown; and

 

$       
Dr. Ghazali=s failure to obtain
informed consent ultimately caused Brown=s injuries.[3]


 








Dr.
Ghazali filed a motion to dismiss Brown=s claims
pursuant to section 74.351(b).  The trial
court sustained Dr. Ghazali=s
objections to the sufficiency of Dr. Segev=s
report, finding that the report failed to demonstrate a relationship, direct or
indirect, between Dr. Ghazali and Brown, but the trial court granted Brown a
thirty-day extension to correct the deficiency. 
Brown then served an amended report with the following additional
language:

I have reviewed Defendant[=]s
responses to Plaintiff=s discovery requests, which
identify [Dr. Ghazali] as the on-site medical director for American Laser
Center=s Fort Worth
Office.  Based on my experience as a
founder and active national medical director of Laser Perfect, a laser hair
removal company with over 20 locations, it is my opinion that an indirect
physician-patient relationship existed between Patricia Brown and [Dr.
Ghazali].[4]

Dr. Ghazali thereafter filed a
second motion to dismiss.  The trial
court heard and denied Dr. Ghazali=s second
motion to dismiss on June 4, 2009, and this interlocutory appeal followed.  

III. 
Standard of Review








Generally,
we review a trial court=s denial of a motion to dismiss
under section 74.351 for an abuse of discretion.  Am. Transitional Care Ctrs. of Tex., Inc.
v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001); Moore v. Gatica, 269
S.W.3d 134, 139 (Tex. App.CFort
Worth 2008, pet. denied).  However, we
review de novo the trial court=s denial
of a motion to dismiss when it involves the determination of whether a claim is
a health care liability claim under chapter 74. 
Tesoro v. Alvarez, 281 S.W.3d 654, 656 (Tex. App.CCorpus
Christi 2008, no pet.); Lee v. Boothe, 235 S.W.3d 448, 451 (Tex. App.CDallas
2007, pet. denied).

IV. 
Nonablative Laser Hair Removal Is Not Medical Care

The
legislature enacted the Medical Liability and Insurance Improvement Act (MLIIA)
to Areduce
excessive frequency and severity of health care liability claims@ and to Amake
affordable medical and health care more accessible and available to the
citizens of Texas.@ 
Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541, 543 (Tex.
2004).  To serve these purposes, the
MLIIA includes numerous procedural requirements for health care liability
claims, including a requirement that a claimant timely provide each defendant
with a sufficient expert report.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 74.351.








For the
MLIIA to apply, however, a claim must be a Ahealth
care liability claim.@ 
See id.; Rose, 156 S.W.3d at 543; see also Yamada v.
Friend, No. 02-07-00177-CV, 2008 WL 553690, at *4 (Tex. App.CFort
Worth Feb. 28, 2008, pet. granted) (mem. op.) (AA claim
alleging a breach of a standard of medical care is a health care liability
claim.@)
(citing Wright v. Fowler, 991 S.W.2d 343, 352 (Tex. App.CFort
Worth 1999, no pet.)).  Dr. Ghazali
contends that we need to look no further than Brown=s
petition to determine that her claim is a health care liability claim, but in
determining whether a cause of action is a health care liability claim, we
examine the underlying nature of the claim and are not bound by the form of the
pleading.  Diversicare Gen. Partner,
Inc. v. Rubio, 185 S.W.3d 842, 847 (Tex. 2005). 

A.
Definitions of Health Care, Medical Care, and Treatment

In
determining whether Brown=s claim is a health care
liability claim, we begin with established principles of statutory
construction.  Marks v. St. Luke=s
Episcopal, No. 07-0783, 2009 WL 2667801, at *3 (Tex. Aug. 28, 2009).  The prevailing principle is that we give
effect to legislative intent.  See
Tex. Gov=t Code
Ann. ' 312.005
(Vernon 2009); see also Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378,
383 (Tex. 2000).  We then interpret a
statute by reading the words and phrases in context and construing them
according to the rules of grammar and common usage.  Tex. Gov=t Code
Ann. ' 311.011(a)
(Vernon 2009).  Words that are not
defined are given their ordinary meaning. 
Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864,
865 (Tex. 1999).  When possible, all
words are given effect and none of the statute=s
language is treated as surplusage.  Cont=l Cas.
Ins. Co. v. Functional Restoration Assocs., 19 S.W.3d 393, 402
(Tex. 2000).

The MLIIA provides the following definitions
relevant to Brown=s claims:

 








AHealth care@ means any act or
treatment performed or furnished, or that should have been performed or
furnished, by any health care provider for, to, or on behalf of a patient
during the patient=s medical care, treatment,
or confinement.

 

. . . .

 

AHealth care liability
claim@ means a cause of action
against a health care provider or physician for treatment, lack of treatment,
or other claimed departure from accepted standards of medical care, or health
care, or safety or professional or administrative services directly related
to health care, which proximately results in injury to or death of a claimant,
whether the claimant's claim or cause of action sounds in tort or contract.

 

. . . .

 

AMedical
care@ means
any act as defined as practicing medicine under Section 151.002,
Occupations Code, performed or furnished, or which should have been performed,
by one licensed to practice medicine in this state for, to, or on behalf of a
patient . . . .

Tex. Civ. Prac. & Rem. Code
Ann. ' 74.001(a)(10),
(13), (19) (Vernon 2009) (emphasis added). 


APracticing medicine@ means the diagnosis,
treatment, or offer to treat a mental or physical disease or disorder or a
physical deformity or injury by any system or method, or the attempt to effect
cures of those conditions . . . .

 

Tex. Occ. Code Ann. ' 151.002(13)
(Vernon 2009).








Although
the MLIlA defines medical care, it does not define Atreatment.@  See generally Tex. Civ. Prac. &
Rem.Code Ann. ' 74.001; Tesoro, 281
S.W.3d at 658.  Therefore, we look to the
plain meaning of Atreatment@ to
determine its application in this case. 
Tex. Civ. Prac. & Rem. Code Ann. '
74.001(b) (AAny legal term or word of art
used in this chapter, not otherwise defined in this chapter, shall have such
meaning as is consistent with the common law.@);  Kendrick v. Garcia, 171 S.W.3d 698,
704 (Tex. App.CEastland 2005, pet. denied) (A[Section
74.001(b)] essentially restates the rule of statutory construction that terms
in a statute are to be given their plain meaning.@).  ATreatment@ is
defined by Mosby=s Medical Dictionary as Athe care
and management of a patient to combat, ameliorate, or prevent a disease,
disorder, or injury.@ 
Mosby's Medical Dictionary 1880 (8th ed. 2009).  We will therefore use this definition in
deciding whether laser hair removal constitutes medical care or treatment.

Because
the parties agree that Dr. Ghazali is a physician, the primary issue before
this court is whether Brown=s claim
concerns an act that occurred, or should have occurred, during her medical care
or treatment.

B.  Brown=s Claim
Is Not A Health Care Liability Claim








The
parties do not argue, and the record does not suggest, that Brown sought laser
hair removal to Acombat, ameliorate, or prevent a
disease, disorder, or injury@ or that
the hair removal relates to a Aphysical
disease or disorder or physical deformity or injury.@  See Tex. Civ. Prac. & Rem. Code
Ann. ' 74.001(a)(19);
Tex. Occ. Code Ann. ' 151.002(13); Mosby=s
Medical Dictionary 1880 (8th ed. 2009). 
Therefore, Brown=s laser hair removal is not Atreatment@ or Amedical
care.@  And because Brown=s laser
hair removal is not Atreatment@ or Amedical
care,@ it
follows that it is also not Ahealth
care@ because
Ahealth
care@
requires an act or treatment during the patient=s
medical care or treatment.[5]  See Tex. Civ. Prac. & Rem. Code
Ann. ' 74.001(a)(10).








In 2009,
the legislature amended the health and safety code to specifically regulate
laser hair removal procedures and facilities. 
See Tex. Health & Safety Code Ann. '' 401.501B.520
(Vernon Supp. 2009).  Under the amended
code, an individual does not have to be a physician or health care provider to
perform laser hair removalCand may
do so without a physician=s supervisionCas long
as the individual holds the appropriate certificate and does not diagnose,
treat, or offer to treat any client for any physical illness, disease, injury,
defect, or deformity.  Id. '' 401.504(b), 401.505.  The amendment limits a physician=s
involvement in cosmetic laser hair removal by simply requiring a laser hair
removal facility to have a written contract with a physician to establish
protocols for the facility=s
services and to audit the facility=s
protocols and operations.  Id. ' 401.519.  This contractual requirement is not related
to Brown=s
claims; nor does Brown assert that Dr. Ghazali diagnosed, treated, or offered
to treat her for any physical illness, disease, injury, defect, or deformity.  Id. '' 401.504(b), 401.505.  We therefore hold that Brown=s
lawsuit concerning her laser hair removal does not constitute a health care
liability claim.[6]








The
reasoning in Tesoro v. Alvarez supports our conclusion that Brown=s claim
is not a health care liability claim.  See
281 S.W.3d at 660B65.  In concluding that Alvarez=s claim
was not a health care liability claim, the Tesoro court determined that
laser hair removal is not transformed into Ahealth
care@ simply
because the procedure occurs in a medical clinic or the alleged negligence
involved a regulated medical device.  Id.
at 660B61.  In addition, the Tesoro court
considered the following factors:  (1) a
laser hair removal device could be used by a lay person without a physician or
a health care provider present; (2) the absence of allegations of medical
treatment or breaches of medical care in Alvarez=s
original petition;[7]
(3) the absence of legislation concerning the regulation of laser hair removal;
and (4) the holdings of other states= courts
of appeals that laser hair removal is not Ahealth
care.@  Id. at 662B65.  We agree with the Tesoro court=s
analysis and believe it supports our holding here. 








C.  Brown=s Laser Hair Removal Is
Not An Inseparable Part Of The Rendition of Medical Care

 

An act
or omission by a healthcare provider falls within the scope of the MLIIA if it
is a departure from the standards of medical care or healthcare or if it is an
inseparable part of the rendition of medical services.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.001(a)(13);
Marks, 2009 WL 2667801, at *4. 
Dr. Ghazali contends that Brown=s laser
hair removal is an inseparable part of the rendition of medical care, but in
doing so, Dr. Ghazali incorrectly argues that laser hair removal procedures
constitute Amedical care.@  Because laser hair removal is not health
care, medical care, or treatment, the failure to warn of the risks of the
procedure or the negligent performance of the procedure cannot be an
inseparable part of the rendition of health care, medical care, or
treatment.  See Marks, 2009 WL
2667801, at *7 (holding that because the alleged negligence was not directly
related to the rendition of medical or health care, the MLIIA did not apply). 

We
therefore conclude that Brown=s claim
against Dr. Ghazali is not inseparable from the rendition of medical services
and is not a health care liability claim. 
We overrule Dr. Ghazali=s first
issue. 








V.  Expert
Report

In his
second issue, Dr. Ghazali contends the trial court erred by denying his motion
to dismiss because Brown=s expert report did not meet the
requirements of section 74.351.  See
Tex. Civ. Prac. & Rem. Code Ann. '
74.351.  However, Brown was not required
to file an expert report because she did not assert a health care liability
claim.  See id.; Tesoro,
281 S.W.3d at 666.  We therefore overrule
Dr. Ghazali=s second issue.

VI. 
Conclusion

Having
held that Brown=s claims concerning her laser
hair removal procedure do not constitute health care liability claims, we
affirm the trial court=s denial of Dr. Ghazali=s motion
to dismiss.

BILL MEIER

JUSTICE

 

PANEL: 
DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED: 
February 25, 2010











[1]Dr. Ghazali was not
affiliated with American Laser Center after September 2005. 





[2]Brown asserts her claim
for lack of informed consent as an alternative to her other causes of action. 





[3]It is undisputed that Dr.
Ghazali=s name does not appear in
Brown=s medical records and
that Dr. Ghazali did not perform, or participate in performing, the procedure. 





[4]There were no other
changes to the expert report.





[5] We are aware of our
sister court=s holding that laser hair
removal is related to health care when the pleadings allege either that
appellants were directly negligent for failing to adequately train and
supervise employees or for breaching the standard of care applicable to such
health providers.  See Kanase v.
Dodson, No. 07-08-00472-CV, 2009 WL 3425633, at *5 (Tex. App.CAmarillo Oct. 26, 2009,
no pet.)  However, in the Kanase
opinion, the court does not include an analysis of whether cosmetic laser hair
removal conducted by a layperson meets the statutory definition of medical
care, treatment, or health care. 
Moreover, Acourts must be equally
careful not to extend Chapter 74's reach beyond its stated bounds.  Not every action taken by a health care
provider or every injury sustained by a patient falls within the ambit of the
MLIIA.@  See Pallares v. Magic Valley Electric
Coop., Inc., 267 S.W.3d 67, 71 (Tex. App.CCorpus Christi 2008, pet.
denied) (citing Theroux v. Vick, 163 S.W.3d 111, 113 (Tex. App.CSan Antonio 2005, pet.
denied).  Thus, we decline to follow Kanase.





[6]Having held Brown=s laser hair removal is
not health care, medical care, or treatment, we decline to conclude that the
mere use of the word Atreatment@ in Brown=s petition requires a
determination that the underlying nature of her claim is a health care
liability claim.  See Tesoro,
281 S.W.3d at 659; Diversicare Gen. Partner, Inc., 185 S.W.3d at 847. 





[7]Brown=s petition alleges that Aemployees@ operated the laser hair
removal machines and does not allege a breach of medical care.  Thus, we find this case distinguishable from Sarwal
v. Hill.  No. 14-01-01112-CV, 2002 WL
31769295, at *2B3 (Tex. App.CHouston [14th Dist.]
2002, no pet.) (not designated for publication) (holding that appellee=s claim of negligence was
a health care liability claim because the appellee alleged that (1) her
physician explained the laser hair removal procedure to her and (2) the
physician=s registered nurse who
performed the procedure, resulting in the burning and scarring of appellee=s skin, Abreached nursing
standards of care@).