

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-07-122-CV

HARRIS METHODIST FORT WORTH                                      APPELLANT

V.

JO FAWN OLLIE                                                    APPELLEE

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

In this interlocutory appeal, Appellant Harris Methodist Fort Worth (Harris Methodist) contends that the trial court erred by denying its motion to dismiss Appellee Jo Fawn Ollie's claim and by not awarding reasonable attorney's fees to Harris Methodist. We will affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

On June 14, 2004, Ollie underwent a total knee arthroplasty (knee replacement) at Harris Methodist. Ollie alleges that on June 17, 2004, while still a patient at Harris Methodist, she attempted to get out of the bathtub when she fell on the "slippery wet floor," which had created a dangerous and hazardous condition, injuring her right shoulder. On June 16, 2006, Ollie filed suit against Harris Methodist, alleging causes of action under two theories of liability. Ollie asserted under a "general negligence theory" the following:

- Defendant owed Plaintiff and others the duty to provide a safe environment maintained properly, so as to not cause harm and/or injury. Defendant breached said duty by failure to maintain and warn Plaintiff of the dangerous and hazardous condition.

Ollie asserted next under a "medical malpractice theory" the following:

- Defendant breached said duty of medical malpractice by failing to provide a safe environment, maintained properly, so as to not cause harm and/or injury. Defendant breached said duty of medical malpractice by failure to maintain and warn Plaintiff of the dangerous and hazardous condition.

On the same date that she filed suit, Ollie sent Harris Methodist notice of the health care liability claim as required by Chapter 74. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.051 (Vernon 2005). However, on October 11, 2006, Ollie amended her petition, deleting her medical malpractice claim but keeping her general negligence claim as stated in her original petition.

2

Harris Methodist filed a motion to dismiss Ollie's claim because Ollie failed to comply with the requirements of section 74.351 of the Texas Civil Practice and Remedies Code, stating that in a health care liability claim, the claimant shall serve on each party an expert report within 120 days of filing the petition. *Id.* § 74.351(a). The trial court denied the motion to dismiss, and Harris Methodist then filed this interlocutory appeal.

## II. HEALTH CARE LIABILITY CLAIM

Ollie does not argue that she filed an expert report; therefore, in addressing Harris Methodist's first point that the trial court erred by denying its motion to dismiss, our discussion is limited to the issue of whether Ollie's claim constitutes a "health care liability claim."

Generally, we review a denial of a motion to dismiss under an abuse of discretion standard. *Valley Baptist Med. Ctr. v. Stradley*, 210 S.W.3d 770, 773 (Tex. App.—Corpus Christi 2006, pet. denied). However, we review de novo the trial court's denial of a motion to dismiss when it involves the determination of whether the claim is a health care liability claim under Chapter 74. *Id*.

To determine whether Ollie's allegations constitute a health care liability claim, we look to the underlying nature of the claim and are not bound by the form of the pleading. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842,

3

847 (Tex. 2005). Artful pleading and recasting of claims to avoid the requirements of Chapter 74 is not permitted. *Id*. at 854; *Garland Comty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004). If the act or omission alleged in the complaint is an inseparable part of the rendition of health care services, then the claim is a health care liability claim. *Rose*, 156 S.W.3d at 544; *Shults v. Baptist St. Anthony's Hosp. Corp.*, 166 S.W.3d 502, 505 (Tex. App.—Amarillo 2005, pet. denied); *see also Walden v. Jeffrey*, 907 S.W.2d 446, 448 (Tex. 1995). To help us in that determination, we consider whether testimony from a medical or health care professional is necessary to prove the claim. *Diversicare*, 185 S.W.3d at 848, 851.

Ollie maintains that her claim is merely a premises liability claim, whereas Harris Methodist argues that because Ollie alleged that Harris Methodist failed to provide a "safe environment," her allegations constitute a health care liability claim under Chapter 74. A health care liability claim is defined under section 74.001 as follows:

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, *or safety or professional or administrative services directly related to health care*, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (emphasis added).

4

Ollie states that because this case is governed by the new definition[1] of health care liability claim, safety claims must now be directly related to health care. *See id*. We agree with Ollie's reading of the statute and have recently held that safety claims under Chapter 74 must be directly related to health care. *See Yamada v. Friend*, No. 02-07-00177-CV, 2008 WL 553690, at *3 (Tex. App.—Fort Worth Feb. 28, 2008, no pet. h.) (mem. op.) (not designated for publication); *See also Omaha Healthcare Ctr., L.L.C. v. Johnson*, 246 S.W.3d 278, 284 (Tex. App.—Texarkana 2008, pet. filed); *Christus Health v. Beal*, 240 S.W.3d 282, 289 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Stradley*, 210 S.W.3d at 775. *But see Holguin v. Laredo Reg'l Med. Ctr., L.P.*, 256 S.W.3d 349, 354–55 (Tex. App.—San Antonio 2008, no pet.) (citing *Emeritus Corp. v. Highsmith*, 211 S.W.3d 321, 328 (Tex. App.—San Antonio 2006, pet. denied)) (rejecting the contention that safety claims must be directly related to health care).

---

[1] A "health care liability claim" was previously defined as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient . . . ." *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041, *repealed and codified as amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex. Gen. Laws 847, 865, 884.

Harris Methodist argues that a safety claim does not have to be directly related to health care,[2] but it contends that even if this court reads the statute as requiring this direct relationship—and we do—Ollie's claim still falls under Chapter 74. The supreme court in *Diversicare* defined "safety" as the condition of being "untouched by danger; not exposed to danger; secure from danger, harm or loss." 185 S.W.3d at 855. "Health care" is defined under section 74.001 as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Tex. Civ. Prac. & Rem. Code Ann. § 74.001(10).

Harris Methodist relies heavily on the supreme court's holding in *Diversicare* to support its argument that Ollie's claim is a health care liability claim. *See* 185 S.W.3d 842. The appellant in *Diversicare*, a nursing home resident who suffered from Senile Dementia of the Alzheimer's Type, sustained

---

[2] Harris Methodist asserts that interpreting the statute as requiring safety claims to be directly related to health care would "thwart" the intent of the legislature and create a "patently absurd result." Harris Methodist urges us to interpret the statute in the same manner as Chief Justice Jefferson in *Diversicare*. *See* 185 S.W.3d at 861 n.4 (Jefferson, J., concurring in part, dissenting in part, and concurring in the judgment) ("[C]laims for 'professional or administrative services' must be 'directly related to health care'; however, there is no indication that claims involving 'safety' must also relate to health care. . . . I read the amended statute as requiring only that claims for 'professional or administrative services' be 'directly related to health care.'").

injuries from two separate falls and was sexually assaulted at the nursing home by another resident. *Id*. at 845. In connection with her injuries sustained from the falls, the appellant alleged that the nursing home and its staff were negligent in failing to provide adequate supervision and nursing services to meet her fundamental needs; failing to budget for, hire, and train a sufficient number of qualified direct health care staff; and failing to develop and implement adequate policies and procedures for safety, training, and staffing at its nursing homes. *Id*. She alleged further in an amended petition regarding the sexual assault that the nursing home and its staff failed to adequately supervise and monitor her to protect her from sexual abuse and assault by another resident. *Id*.

The supreme court ultimately held that the appellant's claims, including those concerning the sexual assault, were health care liability claims based on the special relationship between a nursing home and its residents. *Id*. at 850–55. Health care staff make judgments about the care, treatment, and protection of individual patients and the patient populations in their facilities based on the mental and physical care the patients require. *Id*. at 850. The supreme court stated that expert testimony is required to determine the appropriate number, training, and certifications of medical professionals

7

necessary to care for and protect patients in weakened conditions from injury by other patients in a health care facility. *Id*. at 851.

Harris Methodist contends that because Ollie's specific allegation of negligence derives from the relationship between a hospital and its patient, Ollie's claim "in that regard" is a claim that Harris Methodist was negligent in failing to properly supervise her, failing to properly maintain a safe environment, and in allowing her to be placed in a situation where she could suffer this fall. We disagree.

While the supreme court in *Diversicare* held that the appellant's claims were health care liability claims, it noted that while not present in that case, "[t]here may be circumstances that give rise to premises liability claims in a healthcare setting that may not be properly classified as health care liability claims." *Id*. at 854. The supreme court stated that the appellant was not complaining about an unlocked window that gave an intruder access to the facility or a rickety staircase that gave way under her weight; her allegations implicated more than inadequate security and *"negligent maintenance."* *Id*. (emphasis added).

Like the appellant in *Diversicare*, Ollie was in a weakened condition at the time of the injury. She was bathing in the hospital bathroom three days removed from a total knee replacement when she fell and injured her shoulder.

8

Unlike the appellant in *Diversicare*, however, Ollie alleged that Harris Methodist failed to maintain and warn Ollie of the dangerous and hazardous condition—i.e., the slippery, wet bathroom floor—not that Harris Methodist failed to properly supervise her or provide care for her while taking a bath. Ollie was a patient in a weakened condition complaining of the rickety staircase or the unlocked window.[3] Her pleading does not state that special precautions should have been taken for her as a post-knee replacement patient. Her allegations assert a breach of ordinary care.

Harris Methodist argues next that if safety claims must be directly related to health care, the broad definition of health care encompasses Ollie's claim on its face. Harris Methodist states that the term health care, defined as "an act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement," is so broad as to "cover virtually *anything* that could befall a patient during a patient's confinement at

---

[3] Based on this reasoning, we agree with the dissent in *Marks v. St. Luke's Episcopal Hospital*—a case in which Harris Methodist cites for the majority's holding—stating that allegations that a patient's bed had been negligently attached and assembled, creating a dangerous condition, were premises liability claims akin to claims involving a rickety staircase. *See* 229 S.W.3d 396, 403–05 (Tex. App.—Houston [1st Dist.] 2007, pet. granted) (Jennings, J., concurring in part and dissenting in part).

the hospital." Tex. Civ. Prac. & Rem. Code Ann. § 74.001(10). Thus, it argues that safe maintenance of the patient's bathroom and warning a patient of a dangerous and hazardous condition during the patient's convalescence in the hospital following a knee replacement are acts that should have been performed during the patient's confinement. *See id.*

We find this argument incongruent, however, with Harris Methodist's earlier position regarding the interpretation of the newly revised definition of health care liability claim. Harris Methodist previously argued that reading the statute in a manner that modified safety with the "restrictive phrase" directly related to health care would "thwart" the legislature's intent. It went on to state in its argument against reading the statute as requiring that safety be directly related to health care that "there is nothing to indicate that the Legislature . . . intended to *narrow* the breadth of a significant portion of [tort-reform legislation] and exempt claims that had previously been considered 'health care liability claims' from the newly revised definition." [Emphasis added]. Thus, Harris Methodist argues, without explanation, that the addition of "directly related to health care" both broadens and narrows the definition of health care liability claim.

In addressing this argument, we look to a case in which the supreme court denied petition for discretionary review on the same day it delivered the

10

opinion in *Diversicare*. *See Shults*, 166 S.W.3d at 502. In *Shults*, the hospital instructed the appellant, who suffered from diabetes, to take a shower in preparation for surgery on his leg. *Id.* at 503. After showering, the appellant injured his foot when he allegedly stepped on a sharp paint chip on the bathroom floor. *Id*. Among other claims, the appellant alleged that the hospital had been negligent by failing to provide a reasonably safe shower, inspect the shower, and adequately supervise the renovation of the shower. *Id*.

The court stated that personal injury claims resulting from departures from accepted standards of safety may be health care liability claims but that such departures must be "inseparable parts of the rendition of medical services and the standards of safety within the health care industry to be covered by the Act." *Id*. at 505. The court of appeals held that the appellant's claims were not health care liability claims because the presence of a sharp paint chip in the shower of the appellant's hospital room could not be considered in any way an inseparable part of the medical services rendered to the appellant. *Id*.

Likewise, we cannot say that cleaning the bathroom floor and warning Ollie of its condition is inseparable from the medical or health care services rendered to Ollie. *Id.*; *see also Stradley*, 210 S.W.3d at 776 (stating that in most situations a doctor's recommendation to exercise is not related to the rendition of health care). Indeed, medical testimony is not necessary to

11

understand Ollie's claim that Harris Methodist failed to use ordinary care as alleged in her petition.[4]

Further, the supreme court in *Diversicare* interpreted the effect of the term "safety" as included in the previous definition of health care liability claim, stating that "the Legislature's inclusion within the scope of the MLIIA of claims based on breaches of accepted standards of 'safety' *expands* the scope of the statute beyond what it would be if it only covered medical and *health care*." 185 S.W.3d at 855 (emphasis added). The Court went on to note, however, that while the term safety expanded the scope of the previous statute, "[p]rofessional supervision, monitoring, and protection of the patient population necessarily implicate the accepted standards of safety under the MLIIA, just as those duties in this case are included in the term health care." *Id*. Under this construct, the Court stated that some circumstances might give rise to premises liability claims in a health care setting that may not be properly classified as health care liability claims like a rickety staircase or an unlocked

---

[4] This is not a case involving a health care liability claim that may be easy for the jury to understand as Harris Methodist asserts, but rather a claim for breach of ordinary care in which no expert testimony is needed. *See Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) (stating that even though the jury might not need the aid of expert testimony to determine the issues of the case involving lack of consent and battery during the treatment of a patient, the expert report is still a necessary requirement in pleading a health care liability claim under the statute).

window, which as we stated above are similar to Ollie's claim regarding the slippery, wet floor.  Thus, we cannot conclude, as Harris Methodist urges, that this category of negligent maintenance claims that were apparently not considered health care liability claims under *Diversicare* are somehow now transformed to health care liability claims because the new definition modifies "safety" with the phrase "directly related to health care."

Lastly, we note one case that discusses health care liability claims in the context of a patient that suffered an injury while in a post-operative condition like Ollie's.  *See Torres v. Mem'l Hermann Hosp. Sys.*, 186 S.W.3d 43, 44 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  The appellant in *Torres* underwent knee replacement surgery at the hospital, and the hospital transferred her to the rehabilitation unit three days after her surgery.  *Id*.  While at the rehabilitation unit, the appellant felt weak and could not walk without assistance.  *Id*.  The appellant needed to use the restroom, but the nurses allegedly told her that because there were neither bedpans nor bedside commodes on the rehabilitation floor, she would have to walk to the restroom. *Id*.  The appellant claims that she asked for help but that the nurses never came to assist her.  *Id*.  The appellant's daughter attempted to help the appellant walk to the restroom, but the appellant fell and fractured the femur bone of her surgically-repaired leg.  *Id*.

13

In her petition, the appellant alleged that because she was a patient at the hospital, the hospital owed her a duty to supply the required equipment and instrumentalities for the care of its patients, including furnishing a bedpan and other similar devices and furnishing adequate care to assist her in her rehabilitation period. *Id*. at 45. The court of appeals held that the underlying nature of the appellant's allegations was that the hospital and the nurses did not provide her with proper treatment and facilities during her post-operative inpatient rehabilitation. *Id*. at 48 Thus, the court held that her claims were health care liability claims. *Id*.

*Torres* differs from the present case because Ollie did not allege a failure to care for her as a post-operative patient or a failure to provide certain instrumentalities to help her take a shower or bath. In *Torres*, the appellant's allegations were inseparable from the medical services—or lack of medical services—that she received while in the rehabilitation unit. We cannot say, however, that Ollie's claim that the hospital failed to properly clean the bathroom floor and warn her about the hazardous condition is the same as a claim regarding the failure to provide a bedpan or the failure to help a post-operative patient walk to the restroom after that patient had requested such assistance. *See id*. at 44.

In sum, we must look to the underlying nature of Ollie's claim in her petition, not at the underlying nature of all the potential claims that Ollie could have pled. Ollie's claim in her petition states that Harris Methodist failed to use ordinary care, which does not require the aid of expert testimony to comprehend. The acts or omissions complained of are not inseparable from the rendition of medical services and the accepted standards of safety within the health care industry. Ollie's allegations do not constitute a health care liability claim. Accordingly, we overrule Harris Methodist's first point.

### III. ATTORNEY'S FEES

Harris Methodist argues in its second point that the trial court erred by failing to award attorney's fees to Harris Methodist. If the plaintiff fails to file an expert report, the trial court must order the plaintiff to pay reasonable attorney's fees and court costs incurred by the affected health care provider. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)(1). However, because we overruled Harris Methodist's first point, we accordingly overrule its second point.

## IV. Conclusion

Having overruled both of Harris Methodist's points, we affirm the trial court's judgment.

DIXON W. HOLMAN
JUSTICE

PANEL:  DAUPHINOT, HOLMAN, and WALKER, JJ.

WALKER, J. filed a dissenting opinion.

DELIVERED:  October 30, 2008

16



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-122-CV

HARRIS METHODIST FORT WORTH                                    APPELLANT

V.

JO FAWN OLLIE                                                          APPELLEE

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

## DISSENTING OPINION

------------

### I. INTRODUCTION

I respectfully dissent.  The direct liability negligence claim Appellee Jo Fawn Ollie asserts against Appellant Harris Methodist Fort Worth falls squarely within the statutory definition of a "health care liability claim" as a claimed departure from safety directly related to an act furnished by Harris Methodist to Ollie during her confinement in the hospital.  Consequently, Ollie was

required to file an expert report; she did not, and the trial court erred by refusing to dismiss Ollie's claims and by refusing to award attorney's fees to Harris Methodist.

## II. OLLIE'S PLEADINGS AND PROCEDURAL BACKGROUND

Ollie brought suit against Harris Methodist for injuries that she sustained when, as she exited the bathtub, she slipped on the wet floor, fell, and hurt herself. Ollie alleged that

> [o]n or about June 17, 2004, JO FAWN OLLIE was a patient on property controlled by the Defendant, and was injured under the following circumstances: Plaintiff had a total knee arthroplasty on June 14, 2004 and on the date of the accident June 17, 2004, Plaintiff had got into the bathtub and as she was getting out, Plaintiff slipped on the slippery wet floor which created "a dangerous and hazardous condition" and that the Plaintiff fell victim to the hazards and injured her right shoulder.
>
> . . . .
>
> Defendant owed Plaintiff and others the duty to provide a safe environment, maintained properly, so as not to cause harm and/or injury.
> Defendant breached said duty by failure to maintain and warn Plaintiff of the dangerous and hazardous condition.

Ollie did not file any expert report; Harris Methodist subsequently filed a motion to dismiss Ollie's claims with prejudice and for attorney's fees.[5] The trial court

---

[5] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (Vernon Supp. 2008) (requiring trial court to grant defendant's motion to dismiss health care liability claim with prejudice and to award defendant attorney's fees if health

18

conducted a hearing on Harris Methodist's motion to dismiss. Ollie argued that her claim was not a health care liability claim subject to chapter 74 of the civil practice and remedies code; Harris Methodist argued that Ollie's claim did fall within that statute. At the conclusion of the hearing, the trial court denied Harris Methodist's motion to dismiss.

### III. STANDARD OF REVIEW

Whether a claim is a health care liability claim under section 74.351 of the Texas Civil Practice and Remedies Code is a question of law and is reviewed de novo. *Valley Baptist Med. Ctr. v. Stradley*, 210 S.W.3d 770, 773 (Tex. App.—Corpus Christi 2006, pet. denied); *Buck v. Blum*, 130 S.W.3d 285, 290 (Tex. App.—Houston [14th Dist.] 2004, no pet.). In order to determine whether the plaintiff asserted a health care liability claim, we must examine the underlying nature of the allegations. *See Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005). Claimants may not recast a health care liability claim as some other type of claim in an attempt to avoid the application of chapter 74. *See id.* The necessity of expert testimony from a medical or health care professional to prove a claim may also be an important factor in determining whether a cause of action is an inseparable part of the rendition of medical or

care liability claimant fails to file an expert report concerning the conduct of the moving defendant).

19

health care services.  *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842,

847 (Tex. 2005).

**IV.  RELEVANT PROVISIONS OF CHAPTER 74 AND ITS APPLICATION HERE;
OLLIE'S CLAIM IS A HEALTH CARE LIABILITY CLAIM**

A "health care liability claim" is statutorily defined as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(13) (Vernon 2005).  A hospital is

a "health care provider."  *Id*. § 74.001 (11)(G).  And for purposes of the above

definition of a health care liability claim, breach of the accepted standards must

be directly related to "health care," which is defined as "any act . . . furnished

. . . by any health care provider for, to, or on behalf of a patient during the

patient's . . . confinement."  *Id.* § 74.001(10); *Valley Baptist Med. Ctr.*, 210

S.W.3d at 774–75 (holding rules of grammar mandated application of "directly

related" language in definition of health care liability claim to each of the

categories of departures from accepted standards identified in definition);

*Omaha Healthcare Ctr., L.L.C. v. Johnson,* 246 S.W.3d 278, 284 (Tex.

App.—Texarkana 2008, pet. filed) (same).  In every claim that falls within the

20

above definition of a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

Simply applying the above statutory language to the present facts, Ollie's claim is a health care liability claim because she is asserting a cause of action against a health care provider (Harris Methodist) for a claimed departure from accepted standards of safety (Harris Methodist's alleged creation of "a dangerous and hazardous condition" on the bathroom floor) that is directly related to "health care," (that is, directly related to the bath furnished by Harris Methodist to Ollie during her confinement). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(10), (11)(G), (13); *see also* Tex. Gov't Code Ann. § 311.011 (Vernon 2005) (stating that words in statute are to be given common meaning).

## V. ORDINARY CARE IS INAPPLICABLE; OLLIE'S CLAIM IS A HEALTH CARE LIABILITY CLAIM

The majority, nonetheless, characterizes Ollie's claim as a premises liability claim asserting ordinary negligence. The majority cites *Valley Baptist Medical Center*, 210 S.W.3d at 776, *Shults v. Baptist St. Anthony's Hospital*, 166 S.W.3d 502, 503 (Tex. App.—Amarillo 2005, pet. denied), and dicta in

21

*Diversicare*, 185 S.W.3d at 847.[6] While the distinction between these ordinary negligence cases cited by the majority and the present case is hard to articulate, the difference becomes obvious upon an examination of the underlying nature of the claim pleaded by Ollie. *See Diversicare*, 185 S.W.3d at 847 (instructing us to examine the underlying nature of the claim to determine whether a claim is a health care liability claim).

That Ollie's claim is in the underlying nature of a health care liability claim becomes obvious when an effort is made to conceptualize submission of Ollie's claim against Harris Methodist as a premises liability claim for breach of ordinary negligence as contemplated by the majority. The standard premises liability, plaintiff-is-invitee question asks,

> Did the negligence, if any, of those named below proximately cause the [occurrence or injury] in question?
>
> With respect to the condition of the premises, *Don Davis* was negligent if---
>    a.    the condition posed an unreasonable risk of harm, and
>    b.    *Don Davis* knew or reasonably should have known of the danger, and
>    c.    *Don Davis* failed to exercise ordinary care to protect *Paul Payne* from the danger, by both failing to

---

[6] The majority also discusses—in an effort to distinguish—*Torres v. Memorial Hermann Hospital System*, 186 S.W.3d 43, 47–48 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In *Torres*, the Houston First Court held that the plaintiff's claim for injuries when she fell while attempting to walk to the bathroom three days postoperatively was a health care liability claim. *Id*.

22

adequately warn *Paul Payne* of the condition and failing to make that condition reasonably safe.

"Ordinary care," when used with respect to the conduct of *Don Davis* as an owner or occupier of a premises, means that degree of care that would be used by an owner or occupier of ordinary prudence under the same or similar circumstances.

Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Malpractice, Premises & Products* PJC 66.4 (2006).  Any attempt to apply the definition of "ordinary care" to the present facts demonstrates that Ollie's claim is not one for breach of ordinary care.

For example, superimposing the above definition of ordinary care on the present facts, ordinary care when used with respect to the conduct of Harris Methodist means that degree of care that would be used by an owner or occupier of ordinary prudence under the same or similar circumstances, i.e., where the owner or occupier is a hospital, the plaintiff is a patient confined at the hospital, the hospital furnishes a bath for the patient during her confinement, and the patient is three days post a total knee arthroscopy.  "The same or similar circumstances" as those here exist only when the owner or occupier is a hospital, the plaintiff is a post-surgery, limited-mobility patient confined at the hospital, and the danger is a "slippery, wet floor" encountered by the patient when she exits the bath furnished by the hospital to her during

23

her confinement.[7] That is, application of the ordinary care, same-or-similar-circumstances standard to the present facts necessarily inserts a standard of care applicable only to hospitals, not to hotels, bed and breakfasts, or to other owners and occupiers of a premises. Applying the ordinary care definition, a jury could not determine what degree of care should be utilized by Harris Methodist to, as alleged by Ollie, "provide a safe environment, maintained properly, so as not to cause harm and/or injury" or to warn Ollie of "the dangerous and hazardous condition" in the absence of expert testimony—that is, testimony about that standard of care required of a hospital in furnishing a bath for a post-surgery, limited-mobility patient confined at the hospital. *See, e.g.*, *Torres*, 186 S.W.3d at 47–48 (holding plaintiff's claims for injuries when she fell while attempting to walk to the bathroom three days postoperatively was a health care liability claim requiring expert testimony); *Schneider v. Haws*, 118 S.W.3d 886, 891 (Tex. App.—Amarillo 2003, no pet.) (recognizing expert's testimony explained standard of care for doctor in providing escort to return patient to waiting room). In short, an attempted application of the "same

---

[7] The majority notes that Ollie's pleading "does not state that special precautions should have been taken for her as a post-knee replacement patient." Maj. op. at 9. But the content of Ollie's pleading is not controlling; we are to examine the underlying nature of her claim, and she is not permitted to recast a health care liability claim as a premises liability claim. *See Diversicare*, 185 S.W.3d at 847.

24

or similar circumstances" language demonstrates that Ollie's claim is in fact a health care liability claim against a health care provider for a "departure from accepted standards of . . . safety . . . directly related to health care." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(13) (defining "health care liability claim").

Conversely, in the cases relied upon by the majority, the health care provider—like any other owner or occupier of a premises—did owe only ordinary care to its invitee, and application of the "same or similar circumstances" language to the facts of those cases demonstrates this. For example, in *Shults,* the Amarillo Court of Appeals held that a sharp paint chip on the bathroom floor of a patient's hospital room could give rise to a premises liability claim. 166 S.W.3d at 503. A hotel or a bed and breakfast would have the same duty to remove sharp paint chips from an invitee's bathroom floor as a hospital. In other words, application of the ordinary care standard to this claim would not automatically bootstrap the factfinder into a health care provider standard of care. Likewise, in *Stradley*, the Corpus Christi Court of Appeals held that a claim for injuries based on the failure of a treadmill's emergency stop feature was not a health care liability claim. 210 S.W.3d at 771–72. Again, any gym or fitness facility would have the same duty to ensure the proper functioning of the emergency stop features of its equipment as a medical center fitness

25

facility. And again, application of the ordinary care standard to this claim would not automatically bootstrap the factfinder into a health care provider standard of care.

Under this same analysis, Ollie's claim is not, as posited by the majority, akin to a plaintiff-invitee's premises liability complaint about an unlocked window permitting access to an intruder or to a rickety staircase that gave way under an invitee's weight, hypothetical claims mentioned by the supreme court in *Diversicare*. *See* Maj. op. at 9 (citing *Diversicare*, 185 S.W.3d at 854). Application of the ordinary care, same-or-similar circumstances standard to the hypothetical premises liability claims mentioned in *Diversicare* would not automatically bootstrap the factfinder into a health care provider standard of care; all owners and occupiers have the same duty to all invitees to lock windows and to ensure that staircases are not rickety.

The underlying nature of Ollie's claim as a health care liability claim becomes even more apparent upon examining other elements she would be required to prove to establish a traditional premises liability claim. In a traditional premises liability claim, as set forth in the above jury question, Ollie would be required to prove as one element of her claim that the owner (Harris Methodist) had actual or constructive knowledge of some condition on the premises (water on the bathroom floor after a bath). *See Keetch v. Kroger Co.*,

26

845 S.W.2d 262, 264 (Tex. 1992) (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983)). A slip-and-fall plaintiff satisfies this notice element by establishing one of three things: (1) that the defendant placed a substance on the floor; (2) that the defendant actually knew that a substance was on the floor; or (3) that it is more likely than not that the dangerous condition existed long enough to give the premises owner a reasonable opportunity to discover it. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002) (citing *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998) and *Keetch*, 845 S.W.2d at 265).

Thus, Ollie's claim — if treated as a premises liability claim — will require her to prove that Harris Methodist had actual or constructive knowledge that water was on the floor in her bathroom while she was taking a bath. Because a hospital can act only through its employees, this will require Ollie to show that someone, most likely a nurse, knew or should have known of the water on the floor. Under the facts pleaded by Ollie, the issue of whether a nurse knew or should have known of the water on the floor in Ollie's bathroom likewise requires expert testimony. For example, how frequently should a nurse check the bathroom floor of a patient's room? Should a nurse instruct a limited-mobility patient to request assistance in entering or exiting the bathtub? These are questions of the nursing standard of care owed to an in-hospital, limited-

27

mobility patient. *Accord Torres*, 186 S.W.3d at 47–48; *Devereaux v. Harris County Hosp. Dist.*, No. 01-05-00706-CV, 2007 WL 852618, at *4 (Tex. App.—Houston [1st Dist.] Mar. 22, 2007, no pet.) (mem. op.) (holding plaintiff's claim for injuries when she was not properly assisted into wheel chair was health care liability claim). And they are inescapably intertwined with Ollie's claim that Harris Methodist "created 'a dangerous and hazardous condition'" and breached "the duty to provide a safe environment."

Many, if not most, slip-and-fall cases occurring at a hospital will be actionable premises liability claims, not health care liability claims. But this is not one of them. The underlying nature of Ollie's claim establishes that this is a health care liability claim. Consequently, I would sustain Harris Methodist's first issue.

## VI. CONCLUSION

Because the plain language of Chapter 74 of the civil practice and remedies code and the underlying nature of Ollie's claim both establish that her claim is a health care liability claim, I would reverse the trial court's order denying Harris Methodist's motion to dismiss. I would render a judgment of dismissal and remand Harris Methodist's claim for attorneys' fees to the trial court pursuant to section 74.351(b). *See Jernigan v. Langley*, 195 S.W.3d 91, 94 (Tex. 2006). Because the majority does not, I respectfully dissent.

28

SUE WALKER
JUSTICE

DELIVERED:  October 30, 2008