COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-303-CV

 

 

MIKE
NORGAARD, LPC AND                                                APPELLANTS

RIVERBEND BEHAVIORIAL 

HEALTHCARE ASSOCIATES,
P.A.

 

                                                   V.

 

CHERYL
LOCKE PINGEL                                                           APPELLEE

 

                                              ------------

 

           FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Appellants
Mike Norgaard, LPC and Riverbend Behavioral Healthcare Associates, P.A. appeal
from the trial court=s denial of their motion to
dismiss Appellee Cheryl Locke Pingel=s claims
against them.  Because we hold that
Pingel was required to provide an expert report in compliance with section
74.351 of the Texas Civil Practice and Remedies Code,[1]
we reverse.








Norgaard
is a licensed professional counselor (ALPC@).  Riverbend is a professional association of
licensed professional counselors that employs Norgaard.

On July
30, 2005, Pingel went to Harris Methodist Southwest Hospital (Athe
hospital@)
complaining of abdominal pain and vomiting. 
While at the hospital, she also complained of a loss of control and
jerking movements of her right arm and leg. 
She was ultimately discharged with medication for her abdominal symptoms
after the examining doctor determined that her abdominal symptoms were Aof
uncertain etiology.@

On
August 4, 2005, Pingel returned to the hospital complaining that her symptoms
had worsened and that she had developed headaches and was having trouble
speaking and expressing her thoughts.  A
doctor examined her and ordered several tests. 
As part of Pingel=s examination, Norgaard performed
a consultation, conducting a psychiatric and chemical dependency screening of
her.  This screening included evaluating
her memory and speech.  The examining
doctor, Dr. Cochrum, ultimately assessed her condition as a Aneurological
spell@ of
unknown origin and sent Pingel home.








Pingel
subsequently filed suit against Norgaard and Riverbend, as well as various
hospital doctors and nurses, after she experienced a stroke and suffered brain
damage.  Norgaard and Riverbend filed a
motion to dismiss when Pingel did not serve them with an expert report within
the statutory deadline provided by section 74.351.  The trial court denied the motion, and
Norgaard and Riverbend brought this appeal.[2]

We
review for abuse of discretion a trial court=s denial
of a motion to dismiss under section 74.351.[3]  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.[4]








In their
sole issue, Norgaard and Riverbend argue that the trial court abused its
discretion by denying their motion to dismiss because they are health care
providers, and therefore Pingel was required to serve an expert report as to
both Norgaard and Riverbend.  Section 74.351
requires a plaintiff asserting a health care liability claim to serve on each
party one or more expert reports for each physician or health care provider
against whom the plaintiff has asserted a claim.[5]
 If, as to a defendant physician or
health care provider, no expert report is served within 120 days after the
plaintiff filed her original petition, the defendant may move to dismiss the
plaintiff=s claim; the trial court must
grant this motion.[6]

A health
care liability claim is a claim Aagainst
a health care provider or physician for treatment, lack of treatment, or other
claimed departure from accepted standards of medical care, or health care, or
safety or professional or administrative services directly related to health
care, which proximately results in injury to or death of a claimant.@[7]  The term Ahealth
care provider@ includes Aany
person, partnership, professional association, corporation, facility, or
institution duly licensed, certified, registered, or chartered by the State of
Texas to provide health care.@[8]








In her
petition, Pingel does not appear to question that she is asserting a health
care liability claim.  Her petition
begins by stating that A[t]his is a medical malpractice
action@ and
that she is seeking to recover damages Aarising
from the Defendants= medical, nursing, and health
care diagnosis, assessment, care and treatment of her conditions.@  Norgaard and Riverbend were included in her
use of the term ADefendants.@

In her
specific claims against Norgaard, Pingel alleges that Norgaard was Anegligent
in the [LPC] diagnosis, assessment, care and treatment of [Pingel] in that
Norgaard failed to meet the reasonable, prudent, and accepted standards of
[LPC] and/or health care applicable to him.@  She alleges that as an LPC, he failed to
provide timely, proper, and adequate Adiagnosis
and assessment@ of her Aillnesses,
injuries, and/or conditions.@  She further alleges that he failed to provide
adequate LPC Aand/or health care assessment,
testing, evaluation, care and/or therapy for her illnesses, injuries, and/or
conditions.@

As for
Riverbend, Pingel alleges that it was negligent in the Amedical
and/or health care diagnosis, assessment, care and treatment@ of
her.  She asserted that it was vicariously
liable for the acts of its employees or agents for a failure to meet standards
of Ahealth
care.@  She also asserts that Riverbend was directly
liable in connection with her diagnosis, assessment, testing, evaluation, care,
and treatment.








And,
finally, Pingel acknowledges that Norgaard evaluated Pingel after Dr. Cochrum
ordered a consultation, specifically, a Apsychiatric
and chemical dependency screening evaluation and assessment,@ and
that Norgaard conducted that screening using a APsychiatric
and Chemical Dependency Screening and Referral Form.@  At the hearing on the motion to dismiss,
Pingel=s
attorney stated that Norgaard Ashould
have recognized that [Pingel] was having some underlying problems that he could
not deal with, and she needed to be re-evaluated further by the medical
doctors.@  The acts of Norgaard in assessing and
evaluating Pingel were clearly an inseparable part of the rendition of medical
services to Pingel on August 4, 2005. 
Thus, Pingel=s claims based on Norgaard=s acts
or omissions in conducting the screening are health care liability claims.[9]

Despite
the language used in her petition, Pingel asserts that Norgaard is not a health
care provider and therefore no expert report was necessary.  As explained below, however, an LPC fits
within the statute=s definition of a Ahealth
care provider.@








The term
Ahealth
care provider@ is defined in section 74.001 of
the civil practice and remedies code.[10]  The definitions in that section are somewhat
circular in that Ahealth care provider@ is
essentially defined as one licensed to provide Ahealth
care,@[11] and Ahealth
care@ is
defined as an act or treatment performed by a Ahealth
care provider@ during a patient=s
medical care.[12]  Section 74.001(12)(B)(ii) states that the
term Ahealth
care provider@ includes Aan
employee, independent contractor, or agent of a health care provider or
physician acting in the course and scope of the employment or contractual
relationship.@[13]  But neither party addressed and the record
does not establish Norgaard=s
relationship with the hospital or Dr. Cochrum, so we cannot determine if
Norgaard fits within that part of the definition.[14]  Turning to the another part of the
definition, we find some guidance from the inclusion of the words Alicensed,
certified, or registered or chartered . . . to provide health care@ in the
definition of Ahealth care provider.@[15]








The
State of Texas requires LPCs to be licensed.[16]  By statute, the practice of an LPC includes
the planning, implementing, and evaluation of treatment plans using Acounseling
treatment interventions@ that include counseling,
assessment, and consulting.[17]  The term Acounseling
treatment intervention@ expressly Adoes not
permit or include the diagnosis or treatment of a physical condition or
disorder.@[18]  The term Aassessment@
expressly does not permit Athe
diagnosis of a physical condition or disorder.@[19]  Thus, an LPC may not diagnose or treat a physical
condition or disorder.  But the term Acounseling
treatment intervention@ does include Athe
assessment, evaluation, and treatment of a person with a mental, emotional,
or behavioral disorder.@[20]  And the statute expressly provides that an
LPC=s
practice may include the prevention, assessment, evaluation, and treatment of Amental,
emotional, or behavioral disorders and associated distresses that interfere
with mental health.@[21]  Thus, an LPC may evaluate and treat a mental,
emotional, or behavioral, but not physical, disorder.[22]








Health
care includes the care of mental conditions.[23]  Because LPCs are licensed to treat mental or
emotional conditions that interfere with mental health, and are therefore licensed
to provide health care, LPCs are health care providers under the statute.[24]  Because Pingel=s suit
involves an LPC acting in his capacity as a health care provider, specifically
in his psychiatric and chemical dependency assessment and evaluation of her,[25]
Pingel was required to provide an expert report as to Norgaard.[26]  Because she failed to do so, the trial court
abused its discretion by failing to grant Norgaard=s motion
to dismiss.[27]








We
recognize that the Austin Court of Appeals has held that an LPC is not a Ahealth
care provider.@[28]  But that case arose under the predecessor
statute to section 74.351, and that statute applied only to the professions
specifically named in the statute as Ahealth
care provider[s].@[29]  Under the current version of the statute, the
list of professions expressly included in the definition of Ahealth
care provider@ is nonexclusive.[30]  Accordingly, Grace is inapplicable
here.








As for
Riverbend, Pingel=s claims allege that it was both
directly and vicariously liable for its negligence in the Amedical
and/or health care@ diagnosis, assessment, and
treatment of her.  With respect to her
vicarious liability claims, Pingel alleges that Riverbend is liable for the
acts of its Ashareholder(s), director(s), or
officer(s) or employee(s) or agent(s) or servant(s)@ acting
in the course and scope of their Aapplicable
capacities.@ 
Norgaard was the only person associated with Riverbend specifically
named by Pingel.  But because the claims
against Norgaard should have been dismissed for failure to file an expert
report, any claim holding Riverbend vicariously liable for Norgaard=s
actions should have been dismissed as well.[31]








As for
her direct liability claims, those claims, too, required an expert report.  A professional association fits within the
definition of a health care provider.[32]  In this case, Pingel alleges that Riverbend
is a professional association of LPCs, and LPCs are licensed mental health
professionals.[33]  LPCs are health care providers, and therefore
Riverbend is a health care provider.[34]  Furthermore, Pingel has asserted health care
liability claims against Riverbend by alleging that it Afailed
to timely, properly, safely, or adequately govern or supervise the quality of
medical and health care services to and for@ Pingel
and that it departed from Areasonable,
prudent and accepted standards of licensed professional counselors=
professional association care and/or health care@ in its Adiagnosis,
assessment, testing, evaluation, care and treatment of [Pingel=s]
illnesses, injuries, and/or conditions.@[35]  Pingel therefore was required to provide an
expert report for any direct liability claims asserted against Riverbend.[36]  Because she did not do so, the trial court
abused its discretion by denying Riverbend=s motion
to dismiss.[37]








Pingel
argues in her brief that the trial court properly denied the motion to dismiss
because section 74.351 violates her rights under both the United States
Constitution and the Texas Constitution. 
She fails to make any argument as to why this statute is
unconstitutional and cites no authority in support.  Accordingly, we overrule her argument as
inadequately briefed.[38]  We sustain Norgaard and Riverbend=s sole
isssue.

Having
sustained Norgaard and Riverbend=s issue,
we reverse the trial court=s
determination that no expert report was required.  However, because this case involves a matter
of first impression in this court as well as an unsettled area of law, we
remand this case in the interest of justice for the trial court to allow Pingel
to file an expert report.[39]


 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

 

WALKER, J. concurs
without opinion.

 

DELIVERED:  August 31, 2009











[1]Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351 (Vernon Supp.
2008).





[2]See Tex. Civ. Prac. &
Rem. Code Ann. ' 51.014(a)(9) (Vernon
2008), ' 74.351(b).





[3]Moore v. Gatica, 269 S.W.3d 134, 139
(Tex. App.CFort Worth 2008, pet.
denied).





[4]Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241B42 (Tex. 1985), cert. denied, 476 U.S.
1159 (1986). 





[5]Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(a).





[6]Id. ' 74.351(b).





[7]Id. ' 74.001(13) (Vernon
2005).





[8]Id. ' 74.001(12)(A).





[9]See Diversicare Gen.
Partner, Inc. v. Rubio, 185 S.W.3d 842, 848 (Tex. 2005) (AA cause of action alleges a departure from
accepted standards of medical care or health care if the act or omission
complained of is an inseparable part of the rendition of medical services.@); Harris Methodist
Fort Worth v. Ollie, 270 S.W.3d 720, 723 (Tex. App.CFort Worth 2008, pet.
filed) (AIf the act or omission
alleged in the complaint is an inseparable part of the rendition of health care
services, then the claim is a health care liability claim.@).





[10]Tex. Civ. Prac. &
Rem. Code Ann. ' 74.001(12)(A).





[11]Id.





[12]Id. ' 74.001(10).





[13]Id. ' 74.001(12)(B)(ii).





[14]See Brown v. Villegas, 202 S.W.3d 803, 806
(Tex. App.CSan Antonio 2006, no
pet.) (holding that laboratory could not rely on status as independent
contractor to a doctor to qualify as a health care provider when record did not
contain any evidence establishing an independent contractor relationship).





[15]Id.





[16]Tex. Occ. Code Ann. ' 503.301 (Vernon 2004).





[17]Id. ' 503.003(a) (Vernon
2004).





[18]Id. ' 503.003(b)(4).





[19]Id. ' 503.003(b)(1). 





[20]Id. ' 503.003(b)(4)(C)
(emphasis added). 





[21]Id. ' 503.003(a)(2).





[22]Id. ' 503.003(b)(4)(C).





[23]See id. ' 151.002 (13) (Vernon
Supp. 2008) (defining Apracticing medicine@ to include Athe diagnosis, treatment,
or offer to treat a mental or physical disease or disorder@) (emphasis added); Tex.
Health & Safety Code Ann. ' 166.002(7) (Vernon Supp. 2008) (regulating
advance directives and defining Ahealth care or treatment decision@ as Aconsent, refusal to
consent, or withdrawal of consent to health care, treatment, service, or a
procedure to maintain, diagnose, or treat an individual=s physical or mental
condition@); Diversicare,
185 S.W.3d at 850 (noting that health care staff make judgments about the care,
treatment, and protection of patients Abased on the mental and physical care the
patients require@) (emphasis added).





[24]See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.001(10).





[25]See Tex. Occ. Code Ann. ' 503.003(a)(2) (including
within the definition of Apractice of professional
counseling@ the assessment and
evaluation of Amental, emotional, or
behavioral disorders and associated distresses that interfere with mental
health@).





[26]See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(b).





[27]See id.





[28]Grace v. Colorito, 4 S.W.3d 765, 769 (Tex.
App.CAustin 1999, pet.
denied).





[29]See id.





[30]See Christus Health v.
Beal,
240 S.W.3d 282, 286 (Tex. App.CHouston [1st Dist.] 2007, no pet.); Skloss v.
Perez, No. 01‑08‑00484‑CV, 2009 WL 40438, at *6 (Tex.
App.CHouston [1st Dist.] Jan
8, 2009, no pet.) (mem. op.) (concluding that LPC defendant was a health care
provider).





[31]Compare In re McAllen
Med. Ctr., Inc., 275 S.W.3d 458, 463B64 (Tex. 2008) (stating that vicarious liability
claim against hospital based on doctor=s acting as agent of hospital was viable only if
doctor was negligent, and thus the claim had to be supported by an expert
report), with Univ. of Tex. Sw. Med. Ctr. v. Dale, 188 S.W.3d 877, 879
(Tex. App.CDallas 2006, no pet.)
(holding that expert report is sufficient as to hospital if it is sufficient as
to resident physicians because plaintiff=s claims sought to hold hospital vicariously
liable for actions of resident physicians).





[32]See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.001(12)(A) (providing
that term Ahealth care provider@ includes Aany . . . professional
association . . . registered . . . to provide health care@); see also Tex.
Rev. Civ. Stat. art. 1528f, '2(B)(2), (3) (authorizing the formation of a
professional association by physicians and by A[p]rofessionals, other
than physicians, engaged in related mental health fields such as psychology,
clinical social work, licensed professional counseling, and licensed marriage
and family therapy@); Tex. Bus. Orgs. Code
Ann. ' 301.003(2)A) (Vernon
2008) (defining Aprofessional association@ as an association formed
to provide the services of Aa doctor of medicine, doctor of osteopathy,
doctor of podiatry, dentist, chiropractor, optometrist, therapeutic
optometrist, veterinarian, or licensed mental health professional@).





[33]See Tex. Occ. Code Ann '' 503.001, 503.301.





[34]See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.001(12)(A).





[35]See id. ' 74.001(10).





[36]Id. ' 74.351(a); see also
Ctr. For Neurological Disorders, P.A. v. George, 261 S.W.3d 285, 294 (Tex.
App.CFort Worth 2008, pet.
denied).





[37]Tex. Civ. Prac. &
Rem. Code Ann ' 74.351(b).





[38]See Tex. R. App. P. 38.1(i).





[39]See Tex. Civ. Prac. &
Rem. Code Ann ' 74.351(a); Tex. R. App.
P. 43.3; In re Doe, 19 S.W.3d 249, 257 (Tex. 2000) (remanding in the
interest of justice when case involved matter of first impression); Scott
Bader, Inc. v. Sandstone Prods., Inc., 248 S.W.3d 802, 822 (Tex. App.CHouston [1st Dist.] 2008,
no pet.) (AAppellate courts have
broad discretion to remand for a new trial in the interest of justice.@).